UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:                                                        Case No.  3:12-bk-07402-JAF

NEW LIGHT CHRISTIAN CHURCH, INC.,              Chapter 11

            Debtor.

_____/

### MOTION FOR RELIEF FROM THE
### AUTOMATIC STAY FILED BY HANCOCK BANK
**(4165 Lorenzo Court, Jacksonville, Florida 32208)**

Hancock Bank ("Hancock" or "Movant"), a secured creditor herein, moves the Court,

pursuant to 11 U.S.C. § 362(d) and Rules 4001(a)(1) and 9014 of the Federal Rules of

Bankruptcy Procedure, for entry of an order granting it relief from the automatic stay, and as

grounds therefor shows as follows:

I.      PRELIMINARY STATEMENT OF RELIEF REQUESTED

1.      Hancock Bank seeks termination of the automatic stay under 11 U.S.C. § 362 in

order to foreclose its security interests in certain real and personal property.  The applicable

bankruptcy provisions and rules supporting this relief are set forth in this Motion.

2.      On November 14, 2012 (the "Petition Date"), New Light Christian Church, Inc.

(the "Debtor") filed a petition for relief under Chapter 11 of Title 11 of the United States Code

(the "Bankruptcy Code").   The Debtor continues to operate its business as a debtor-in-

possession.

3.      In October 2008, Hancock Bank and the Debtor entered into a loan in connection

with the Debtor's financing of the Real Property (as defined below).  To secure its obligations to

Hancock Bank, the Debtor granted to Hancock Bank security interests in, and liens upon, certain

real and personal property, including but not limited to all rents, issues, revenues, and profits generated by the operation of the Real Property.

4.       As a result of the Debtor's breaches of the underlying loan documents, Hancock Bank sought to foreclose its interest in the Mortgaged Property (including all real and personal property upon which it has perfected first priority liens) in state court. After Hancock Bank filed its state court foreclosure proceeding, the Debtor filed this Chapter 11 case.

5.       This Court has jurisdiction of the parties and the subject matter pursuant to 11 U.S.C. § 101, *et seq.*, 28 U.S.C. § 1334, and 28 U.S.C. § 157(b)(2)(A) and (G). Venue over this matter is proper in the United States District Court for the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. § 1409.

## II.       FACTUAL AND PROCEDURAL BACKGROUND

6.       On or about October 3, 2008, Peoples First Community Bank ("Peoples First") made a commercial loan to the Debtor, which was evidenced by that certain Mortgage Note dated October 3, 2008 in the original principal amount of $143,000 (the "Original Note"), a true and correct copy of which is attached hereto as **Exhibit "A"**.

7.       On or about January 14, 2009, Debtor executed and delivered to Peoples First a consolidated mortgage note and future advance, modification, consolidation and restatement agreement (collectively, the "Advance"), a copy of which was recorded in Official Records 14767, page 1441, of the public Records of Duval County, Florida. The amount of the Advance is $153,000. A copy of the Advance is attached hereto as **Exhibit "B"**. The Original Note, as modified by the Advance, is hereafter referred to as the "Note."

8.       In order to secure the indebtedness evidenced by the Note, the Debtor executed and delivered to Peoples First that certain Real Estate Mortgage and Security Agreement dated October 3, 2008 (the "Mortgage"), which was recorded in Official Records Book 14662, page

2234 of the public records of Duval County, Florida, and which mortgaged certain real property located in Duval County, Florida with an address commonly known as 4165 Lorenzo Court, Jacksonville, Florida 32208 (the "Real Property"). A true and correct copy of the Mortgage, which includes a description of the Real Property, is attached hereto as **Exhibit "C."**

9.      The Mortgage also encumbered certain articles of personal property owned by the Debtor, including, but not limited to, all structures, and improvements now and hereafter on said land and fixtures attached thereto, and all rents, issues, proceeds and profits accruing and to accrue from said premises and property of similar type or kind hereafter affixed to or incorporated in the Real Property and all accessions thereto, as more particularly described in the Mortgage (collectively, the "Personal Property").

10.     In order to further secure the indebtedness evidenced by the Note, the Debtor executed and delivered to Peoples First that certain Assignment of Rents dated October 3, 2008, and recorded in Official Records Book 14662, page 2249 of the public records of Duval County, Florida (the "Assignment of Rents"), a copy of which is attached hereto as **Exhibit "D"**. The Assignment of Rents encumbered, among other things, all of the Debtor's right, title, and interest in and to all rents and leases and all renewals or extensions thereof, together with all the rents, now existing or hereafter arising, as more particularly described in the Mortgage (collectively, the "Rents"). (The Real Property, the Personal Property and the Rents are collectively referred to as the "Mortgaged Property" herein).

11.     In order to further secure the Note, Peoples First filed a Uniform Commercial Code Financing Statement in Official Records Book 14662, Book 2253 of the public records of Duval County, Florida (the "Financing Statement") to perfect its security interest in the in the Personal Property. A true and correct copy of the Financing Statement is attached hereto as **Exhibit "E."**

12.    Hancock Bank owns and holds the Note and Mortgage as evidenced by an allonge to the Note and an assignment of note, mortgage and loan documents (the "Assignment") recorded in Official Records 15340, page 2161, of the public records of Duval County, Florida. Copies of the Allonge and Assignment are attached hereto as **Composite Exhibit "F".**

13.    The Note, Mortgage, Assignment of Rents, and Financing Statement are collectively referred to as the "Loan Documents."

14.    Hancock Bank has declared the entire indebtedness evidenced by the Loan Documents due and payable. Debtor defaulted under the Loan Documents by failing to pay the payment due on March 3, 2012 and all subsequent payments.

## III.    THE DEBTOR'S BANKRUPTCY FILING

15.    As of the Petition Date, the Debtor owed to Hancock Bank $164,141.65, inclusive of principal, accrued interest, and late charges under the Loan Documents.

## IV.    BASES FOR RELIEF

16.    Hancock Bank seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2) in order to pursue its rights and remedies under state law, including but not limited to, its rights to foreclose its security interests in the Mortgaged Property.

17.    Section 362(d) sets forth the standards for determining whether relief from stay is appropriate. Section 362(d) states:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
> (1)  for cause, including lack of adequate protection of an interest in property of such party in interest;
>
> (2)   with respect to a stay of an act against property under subsection (a) of this section, if–
>
>> (A)  the debtor does not have equity in such property; and

(B)  such property is not necessary to an effective reorganization.

### A.  Hancock Bank Is Entitled to Relief From the Automatic Stay For Cause Due to Lack of Adequate Protection—§ 362(d)(1)

18.    The Mortgaged Property has been subjected to continuing depreciation, damage and loss.

19.    Hancock Bank has not received, and the Debtor has not agreed to provide, any adequate protection of Hancock Bank's interest in the Mortgaged Property.  Therefore, Hancock Bank is not adequately protected with respect to the Mortgaged Property.

20.    As a result of the Debtor's failure to provide Hancock Bank with adequate protection, Hancock Bank is entitled to relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code.

### B.  Hancock Bank Is Entitled to Relief From the Automatic Stay for Lack of Equity and Property Not Necessary for Reorganization—§ 362(d)(2)

21.    Upon information and belief, the Debtor lacks equity in the Mortgaged Property and it is not necessary for reorganization.

22.    Upon information and belief, the total indebtedness due to Hancock Bank under the Loan Documents exceeds the value of the Mortgaged Property.  Therefore, the Debtor has no equity in the Mortgaged Property.

23.    Once a movant establishes that the debtor does not have any equity in the property, the burden shifts to the debtor to prove that the property is necessary for an effective reorganization. *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988).  In other words, there "must be a reasonable possibility of a successful reorganization within a reasonable time." *Id.* at 376; *accord In re Villamont-Oxford*, 230 B.R. 457 (Bankr. M.D. Fla. 1998).  Indeed, even during §1121(b)'s exclusivity period, the "lack of a

realistic prospect of an effective reorganization will require 362(d)(2) relief." *United Savings*, 484 U.S. at 375-76.

24.    The Debtor has no hope of reorganization. First, the Debtor has not produced, and cannot produce, evidence sufficient to show that the rents from the Mortgaged Property will even yield a significant positive cash flow. The Debtor's financial history shows that is cannot meet its obligations going forward.

25.    By virtue of all of the foregoing, Hancock Bank will not under any circumstances vote to accept any plan of reorganization the Debtor may put forward. Accordingly, the assets which are subject to the security interest evidenced by the Loan Documents are not necessary to any effective reorganization. As a result, Hancock Bank is entitled to relief from the automatic stay pursuant to Section 362(d)(2) of the Bankruptcy Code.

26.    Hancock Bank requests that the order granting relief from stay be effective and enforceable immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 4001(a)(3) and any other provision of the Bankruptcy Code or Bankruptcy Rules shall not apply.

WHEREFORE, Hancock Bank respectfully requests that this Court enter an order granting the Motion and lifting the automatic stay to permit Hancock Bank to enforce its security interests in the Mortgaged Property pursuant to applicable non-bankruptcy law, and for such other and further relief as the Court may deem just and proper.

Dated this 31st day of January, 2013.

/s/ J. Ellsworth Summers, Jr.
J. Ellsworth Summers, Jr.
Florida Bar No. 0015769
ROGERS TOWERS, P.A.
1301 Riverplace Blvd., Suite 1500
Jacksonville, Florida 32207
(904) 398-3911 (telephone)
(904) 396-0663 (facsimile)
jes@rtlaw.com

Attorneys for Hancock Bank

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished on this 31st day of January, 2013 either by electronic transmission or by United States first class mail postage prepaid to the following: **the Debtor:** New Light Christian Church, Inc., 4216 Moncrief Road West, Jacksonville, FL 32209; **Counsel for Debtor:** Jason A. Burgess, Esq., The Law Offices of Jason A. Burgesss, LLC, 118 West Adams Street, Suite 900, Jacksonville, FL 32202; and **U.S. Trustee:** Elena L. Escamilla, Office of the United States Trustee, 400 W. Washington Street, Suite 1100, Orlando, FL 32801; and the Local Rule 1007-2 Parties in Interest on the attached service list.

s/ J. Ellsworth Summers, Jr.
Attorney

Label Matrix for local noticing
113A-3
Case 3:12-bk-07402-JAF
Middle District of Florida
Jacksonville
Thu Jan 31 13:50:05 EST 2013

Hancock Bank
8195 Point Meadows Way
Jacksonville, FL 32256-9111

United States Trustee - JAX 11 +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

Elena L Escamilla +
Office of the United States Trustee
400 W. Washington Street
Suite 1100
Orlando, FL 32801

J. Ellsworth Summers Jr.+
Rogers Towers, P.A.
1301 Riverplace Blvd. Suite 1500
Jacksonville, FL 32207-1811

Jason A Burgess +
The Law Offices of Jason A. Burgess, LLC
118 West Adams Street, Ste. 900
Jacksonville, FL 32202-3818

End of Label Matrix
Mailable recipients     5
Bypassed recipients     0
Total                   5

# MORTGAGE NOTE

$143,000.00                                                  October 3 , 2008

1.   **Borrower.** Borrower's name and address is:

NEW LIGHT CHRISTIAN CHURCH, INC.,
A Florida Non-Profit Corporation (f/k/a Moncrief Christian
Church, Inc., a Florida Non-Profit Corporation)
4216 Moncrief Road West
Jacksonville, FL 32209

The Borrower as hereafter used means each Borrower and shall be non-gender specific, singular or plural, as the context permits or requires, and include heirs, personal representatives, successors or assigns where applicable and permitted.   Borrower may change Borrower's address from time to time by giving Lender notice as provided hereafter.

2.   **Lender.** Lender's name and address is:

PEOPLES FIRST COMMUNITY BANK
1022 West 23rd Street, 6th Floor
Panama City, FL 32405

The term Lender shall include Lender's successors and assigns.  Lender may change Lender's address from time to time by giving Borrower notice as provided hereafter.

3.   **Loan Periods.**  The Construction Period shall be that period from date hereof through the expiration of sixth month following the date hereof.   The Permanent Loan Period shall be that period beginning with the inception of the seventh month following the date hereof until the "Maturity Date" (as hereinafter defined).

4.   **Loan Amount.**  In return for a loan Borrower has received, Borrower promises to pay U.S. $143,000.00 ("principal"), plus interest, to Lender or Lender's order at Lender's address as provided above.  Borrower acknowledges Lender may transfer this Note.

5.   **Interest.**  Interest shall be charged on the principal balance owing from time to time until all sums owing on this Note have been paid in full.  Until maturity Borrower shall pay interest at the rate of six percent per annum; however, the "Interest Rate" shall change from time to time as further provided in this Section.  Interest shall be calculated on the basis of a 360-day year but shall accrue and be payable on the actual number of days in a month.

The "Index" is the rate of interest equal to the highest prime interest rate as published by the Wall Street Journal (the Wall Street Journal now defines such prime rate as being the "base rate on corporate loans posted by at least 75% of the nation's 30 largest banks" under the heading of "Money Rates").  The base rate of interest does not necessarily reflect the lowest rate of interest charged by a bank to any particular class or category of customers.  If the Index is no longer available, Lender shall choose a new Index which is based upon comparable information.The Interest Rate shall change each day the Index changes as determined by adding one basis point to such Index.  However, the interest rate will not at any time exceed the maximum rate of nine percent per annum (or the maximum rate permitted by applicable law, whichever is less), or fall below the minimum rate of five and one-half percent per annum.  Such determination shall be based upon the most recent Index available.

Lender shall not be obligated to give notice of changes in the Index, the interest rate, or in payment amounts, if any, and such changes shall be effective irrespective of whether notice is given.

6.   **Payments.**  Borrower shall pay only accrued interest one month following date hereof and on the same day of each and every month thereafter through and including the sixth month following date hereof.

080288.B.13 Mortgage Note.doc
Last printed 10/1/2008 3:34 PM

JSS
Initials

EXHIBIT "A"

Borrower shall pay principal and interest by making payments of $579.17 plus accrued interest, monthly beginning on the seventh month following date hereof and continuing on the same day of each and every month thereafter until all of the principal and interest and any other charges described below which Borrower may owe under this Note have been paid in full. However, if by five years following date hereof, Borrower still owes any amounts under this Note, Borrower shall pay those amounts in full on that date, which is called the "Maturity Date". LENDER IS UNDER NO OBLIGATION TO REFINANCE THIS LOAN AT THAT TIME.

Borrower may prepay principal owing on this Note in whole or in part at any time without any premium or charge whatsoever. All prepayments shall be applied first to accrued interest and then to principal in inverse order of maturity. This means Borrower shall still be required to make all payments as agreed until this Note is paid in full.

7. **Maximum lawful rate.** Lender agrees it shall not charge interest or other loan charges that exceed the maximum lawful rate, it being Lender's intent not to charge a usurious interest rate. If it is discovered interest or other loan charges exceed the maximum lawful rate, Borrower shall give Lender the opportunity to refund to Borrower that amount collected which exceeded the maximum lawful rate plus interest on that amount at the maximum lawful rate. The parties shall then modify this Note and all instruments securing this Note so that Borrower shall not be required to pay further interest or other loan charges that exceed the maximum lawful rate.

8. **Borrower's failure to pay as required.**

A.    If Lender has not received the full amount of any monthly payment by the end of ten calendar days after the date it is due, Borrower shall pay a charge to Lender as reimbursement for additional cost for handling overdue payment. The amount of the charge shall be five percent of the past due monthly payment but excluding the payment due on the Maturity Date. Any late charge shall be immediately due and payable.

B.    Borrower shall be in default without notice and Lender may require Borrower to pay immediately the full amount of principal which has not been paid together with all interest, cost and fees owing upon the occurrence of any of the following:

i    Borrower does not pay the full amount of each payment within ten days following date when due.

ii    Borrower fails to keep any promises made in any Security Instrument (as the same is defined hereafter).

iii    Borrower is dissolved or liquidated.

iv    If Donnie L. Smith or Sharon Y. Smith (jointly and severally the "Guarantor") dies or becomes incapacitated, unless within 60 days, Borrower provides substitute collateral and/or guarantees acceptable to Lender.

v    Furthermore if Borrower defaults on account of any other indebtedness to Lender and fails to cure any such default within the time permitted for therein then Borrower shall be in default without notice and Lender may require Borrower to pay immediately the full amount of principal which has not been paid together with all interest, cost and fees owing.

C.    If, at a time when Borrower is in default, Lender does not require immediate payment in full as described above, such shall not be a waiver of Lender's rights and Lender shall retain the right to do so if Borrower is in default at a later time.

D.    Borrower agrees to pay interest on the unpaid balance after default until all sums owing on this Note have been paid in full at the highest applicable lawful rate.

E.    All payments shall be applied: first, to charges for overdue payments that are due under the Note; second, to amounts payable for taxes, insurance, or other advances made by Lender on Borrower's behalf, if any, as provided in the Security Instrument; third, to deposits that Borrower must pay, if any, for the payment of future taxes and insurance as provided in the Security Instrument; fourth, to interest due; and last to principal.

-2-

DS
Initials

F.  Borrower shall pay for all costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, without limitation, for example, reasonable attorneys' fees (before suit is filed, at trial or on appeal, and including any bankruptcy proceedings).

9.  **Notices.**

A.  Unless applicable law requires a different method, any notice to be given to Borrower under this Note shall be given by personally delivering it or by mailing it by first class mail to Borrower at the address provided in Section 1, or at a different address if Borrower has given Lender a written notice of such.

B.  Any notice that must be given to Lender under this Note shall be given by mailing it by first class certified  mail or national overnight delivery service to Lender at the address stated in Section 2, or at a different address if Lender has given Borrower a notice of such.

10. **Obligation.**  Any person or entity who is a guarantor, co-maker, surety or endorser of this Note is fully and personally obligated to keep all of the promises Borrower has made in this Note, including the promise to pay the full amount owed. Any person or entity who assumes these obligations, including the obligations of a guarantor, co-maker, surety or endorser of this Note, is also obligated to keep all of the promises Borrower has made in this Note, and Lender may enforce Lender's rights under this Note against each such person or entity, individually or against all of them together. Borrower agrees to pay any and all set up and collection fees charged by a third party collection agency if Lender so chooses to have this Note placed with said agency for collection purposes.

Any person or entity who has obligations under this Note waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give to other persons or entities notice that amounts due have not been paid.

11. **Security.**  In addition to the protections given Lender under this Note, this Note is secured by (i) a Real Estate Mortgage and Security Agreement; (ii) an Assignment of Rents and Leases; and (iii) a Loan Agreement, (collectively the "Security Instruments"), dated the same date as this Note. The Security Instruments (y) protects Lender from possible losses which might result if Borrower does not keep the promises which Borrower has made in this Note, and (z) describes how and under what further conditions Borrower may be required to make immediate payment in full of all amounts owing under this Note.

12. **WAIVER OF JURY TRIAL.**  BY ACCEPTANCE HEREOF BORROWER AND LENDER AGREE THAT NEITHER PARTY, NOR ANY ASSIGNEE, SUCCESSOR, HEIR OR LEGAL REPRESENTATIVE OF EITHER (ALL OF WHOM ARE HEREINAFTER REFERRED TO AS THE "PARTIES") SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEDURE BASED UPON OR ARISING OUT OF THIS NOTE, ANY OF THE SECURITY INSTRUMENTS OR ANY OTHER INSTRUMENT EVIDENCING, SECURING OR RELATING TO THE INDEBTEDNESS EVIDENCED HEREBY, ANY RELATED AGREEMENT OR INSTRUMENT, OR ANY OTHER COLLATERAL FOR THE INDEBTEDNESS EVIDENCED HEREBY OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG THE PARTIES, OR ANY OF THEM. NONE OF THE PARTIES SHALL SEEK TO CONSOLIDATE ANY SUCH ACTION, IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY NEGOTIATED, ARE A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN OR EXTENSION OF CREDIT EVIDENCED BY THIS NOTE AND SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER PARTY HAS IN ANY WAY AGREED WITH OR REPRESENTED TO THE OTHER THE PROVISIONS OF THIS PARAGRAPH SHALL NOT BE FULLY ENFORCED IN ALL INSTANCES.

13. **Right of set-off.**  Borrower grants Lender a contractual possessory security interest in, and hereby assigns, conveys, delivers, pledges and transfers to Lender all of rights, title and interests in and to Borrower's accounts with Lender (whether checking, savings, or some other account)

-3-

including, without limitation, all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding, however, all IRA, Keogh, and trust accounts.   Borrower authorizes Lender, to the extent permitted by applicable law, to charge or set off all sums owing on this Note against any and all such accounts.

Executed at Jacksonville, Florida on the date set forth above.

NEW LIGHT CHRISTIAN CHURCH, INC.,
A Florida Non-Profit Corporation
(f/k/a Moncrief Christian Church, Inc., A Florida
Non-Profit Corporation)

By: _____

Its _____        President

-4-

Initials

THIS CONSOLIDATED MORTGAGE NOTE IS A CONSOLIDATION AND RESTATEMENT OF THAT CERTAIN MORTGAGE NOTE BY THE BORROWER TO THE LENDER DATED OCTOBER 3, 2008 IN THE ORIGINAL PRINCIPAL SUM OF $143,000.00 AND THAT CERTAIN FUTURE ADVANCE IN THE AMOUNT OF $10,000.00 AS SET FORTH IN THAT CERTAIN FUTURE ADVANCE, MODIFICATION, CONSOLIDATION AND RESTATEMENT AGREEMENT (THE "MODIFICATION") DATED AS OF EVEN DATE HEREWITH. DOCUMENTARY STAMPS AND INTANGIBLE TAX HAVE BEEN HERETOFORE PAID ON MORTGAGE RECORDED IN OFFICIAL RECORDS BOOK 14662, PAGE 2234, OF THE CURRENT PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA AND WITH THE RECORDING OF THE MODIFICATION.

## CONSOLIDATED MORTGAGE NOTE

$153,000.00                                                          January  14  , 2009

1.  **Borrower.** Borrower's name and address is:

    NEW LIGHT CHRISTIAN CHURCH, INC.,
    A Florida Non-Profit Corporation (f/k/a Moncrief Christian
    Church, Inc., a Florida Non-Profit Corporation)
    4216 Moncrief Road West
    Jacksonville, FL 32209

    The Borrower as hereafter used means each Borrower and shall be non-gender specific, singular or plural, as the context permits or requires, and include heirs, personal representatives, successors or assigns where applicable and permitted. Borrower may change Borrower's address from time to time by giving Lender notice as provided hereafter.

2.  **Lender.** Lender's name and address is:

    PEOPLES FIRST COMMUNITY BANK
    1022 West 23rd Street, 6th Floor
    Panama City, FL 32405

    The term Lender shall include Lender's successors and assigns. Lender may change Lender's address from time to time by giving Borrower notice as provided hereafter.

3.  **Loan Periods.** The Construction Period shall be that period from October 3, 2008 through the expiration of April 3, 2009. The Permanent Loan Period shall be that period beginning with the inception of May 3, 2009 until the "Maturity Date" (as hereinafter defined).

4.  **Loan Amount.** In return for a loan Borrower has received, Borrower promises to pay U.S. $153,000.00 ("principal"), plus interest, to Lender or Lender's order at Lender's address as provided above. Borrower acknowledges Lender may transfer this Note.

    **Interest.** Interest shall be charged on the principal balance owing from time to time until all sums owing on this Note have been paid in full. Until maturity Borrower shall pay interest at the rate of six percent per annum; however, the "Interest Rate" shall change from time to time as further provided in this Section. Interest shall be calculated on the basis of a 360-day year but shall accrue and be payable on the actual number of days in a month.

    The "Index" is the rate of interest equal to the highest prime interest rate as published by the Wall Street Journal (the Wall Street Journal now defines such prime rate as being the "base rate on corporate loans posted by at least 75% of the nation's 30 largest banks" under the heading of "Money Rates"). The base rate of interest does not necessarily reflect the lowest rate of interest charged by a bank to any particular class or category of customers. If the Index is no longer available, Lender shall choose a new index which is based upon comparable information. The Interest Rate shall change each day the Index changes as determined by adding one basis point to such Index. However, the interest rate will not at any time exceed the maximum rate of nine percent per annum (or the maximum rate permitted by applicable law, whichever is less), or fall below the minimum rate of five and one-half percent per annum. Such determination shall be based upon the most recent Index available.

030058.C:07 Revised Mortgage Note.doc
Last printed 1/9/2009 12:37 PM

_Ð__ initials



EXHIBIT
"B"

Lender shall not be obligated to give notice of changes in the Index, the interest rate, or in payment amounts, if any, and such changes shall be effective irrespective of whether notice is given.

6. Payments. Borrower shall pay only accrued interest one month following date hereof and on the same day of each and every month thereafter through and including April 3, 2009.

Borrower shall pay principal and interest by making payments of $637.50 plus accrued interest, monthly beginning on May 3, 2009 and continuing on the same day of each and every month thereafter until all of the principal and interest and any other charges described below which Borrower may owe under this Note have been paid in full. However, if by October 3, 2013, Borrower still owes any amounts under this Note, Borrower shall pay those amounts in full on that date, which is called the "Maturity Date". LENDER IS UNDER NO OBLIGATION TO REFINANCE THIS LOAN AT THAT TIME.

Borrower may prepay principal owing on this Note in whole or in part at any time without any premium or charge whatsoever. All prepayments shall be applied first to accrued interest and then to principal in inverse order of maturity. This means Borrower shall still be required to make all payments as agreed until this Note is paid in full.

7. Maximum lawful rate. Lender agrees it shall not charge interest or other loan charges that exceed the maximum lawful rate, it being Lender's intent not to charge a usurious interest rate. If it is discovered interest or other loan charges exceed the maximum lawful rate, Borrower shall give Lender the opportunity to refund to Borrower that amount collected which exceeded the maximum lawful rate plus interest on that amount at the maximum lawful rate. The parties shall then modify this Note and all instruments securing this Note so that Borrower shall not be required to pay further interest or other loan charges that exceed the maximum lawful rate.

8. Borrower's failure to pay as required.

A. If Lender has not received the full amount of any monthly payment by the end of ten calendar days after the date it is due, Borrower shall pay a charge to Lender as reimbursement for additional cost for handling overdue payment. The amount of the charge shall be five percent of the past due monthly payment but excluding the payment due on the Maturity Date. Any late charge shall be immediately due and payable.

B. Borrower shall be in default without notice and Lender may require Borrower to pay immediately the full amount of principal which has not been paid together with all interest, cost and fees owing upon the occurrence of any of the following:

i Borrower does not pay the full amount of each payment within ten days following date when due.

ii Borrower fails to keep any promises made in any Security Instrument (as the same is defined hereafter).

iii Borrower is dissolved or liquidated.

iv If Donnie L. Smith or Sharon Y. Smith (jointly and severally the "Guarantor") dies or becomes incapacitated, unless within 60 days, Borrower provides substitute collateral and/or guarantees acceptable to Lender.

v Furthermore if Borrower defaults on account of any other indebtedness to Lender and fails to cure any such default within the time permitted for therein then Borrower shall be in default without notice and Lender may require Borrower to pay immediately the full amount of principal which has not been paid together with all interest, cost and fees owing.

C. If, at a time when Borrower is in default, Lender does not require immediate payment in full as described above, such shall not be a waiver of Lender's rights and Lender shall retain the right to do so if Borrower is in default at a later time.

D. Borrower agrees to pay interest on the unpaid balance after default until all sums owing on this Note have been paid in full at the highest applicable lawful rate.

-2-

E.  All payments shall be applied: first, to charges for overdue payments that are due under the Note; second, to amounts payable for taxes, insurance, or other advances made by Lender on Borrower's behalf, if any, as provided in the Security Instrument; third, to deposits that Borrower must pay, if any, for the payment of future taxes and insurance as provided in the Security Instrument; fourth, to interest due; and last to principal.

F.  Borrower shall pay for all costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, without limitation, for example, reasonable attorneys' fees (before suit is filed, at trial or on appeal, and including any bankruptcy proceedings).

9.  Notices.

A.  Unless applicable law requires a different method, any notice to be given to Borrower under this Note shall be given by personally delivering it or by mailing it by first class mail to Borrower at the address provided in Section 1, or at a different address if Borrower has given Lender a written notice of such.

B.  Any notice that must be given to Lender under this Note shall be given by mailing it by first class certified mail or national overnight delivery service to Lender at the address stated in Section 2, or at a different address if Lender has given Borrower a notice of such.

10.  Obligation.  Any person or entity who is a guarantor, co-maker, surety or endorser of this Note is fully and personally obligated to keep all of the promises Borrower has made in this Note, including the promise to pay the full amount owed. Any person or entity who assumes these obligations, including the obligations of a guarantor, co-maker, surety or endorser of this Note, is also obligated to keep all of the promises Borrower has made in this Note, and Lender may enforce Lender's rights under this Note against such person or entity, individually or against all of them together. Borrower agrees to pay any and all set up and collection fees charged by a third party collection agency if Lender so chooses to have this Note placed with said agency for collection purposes.

Any person or entity who has obligations under this Note waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give to other persons or entities notice that amounts due have not been paid.

11.  Security.  In addition to the protections given Lender under this Note, this Note is secured by (i) a Real Estate Mortgage and Security Agreement recorded in Official Records Book 14662, page 2234, as modified on even date herewith; (ii) an Assignment of Rents and Leases recorded in Official Records Book 14662, page 2249, as modified on even date herewith; and (iii) a Loan Agreement dated October 3, 2008, (collectively the "Security Instruments"). The Security Instruments (y) protect Lender from possible losses which might result if Borrower does not keep the promises which Borrower has made in this Note, and (z) describe how and under what further conditions Borrower may be required to make immediate payment in full of all amounts owing under this Note.

12.  WAIVER OF JURY TRIAL.  BY ACCEPTANCE HEREOF BORROWER AND LENDER AGREE THAT NEITHER PARTY, NOR ANY ASSIGNEE, SUCCESSOR, HEIR OR LEGAL REPRESENTATIVE OF EITHER (ALL OF WHOM ARE HEREINAFTER REFERRED TO AS THE "PARTIES") SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEDURE BASED UPON OR ARISING OUT OF THIS NOTE, ANY OF THE SECURITY INSTRUMENTS OR ANY OTHER INSTRUMENT EVIDENCING, SECURING OR RELATING TO THE INDEBTEDNESS EVIDENCED HEREBY, ANY RELATED AGREEMENT OR INSTRUMENT, OR ANY OTHER COLLATERAL FOR THE INDEBTEDNESS EVIDENCED HEREBY OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG THE PARTIES, OR ANY OF THEM. NONE OF THE PARTIES SHALL SEEK TO CONSOLIDATE ANY SUCH ACTION, IN WHICH A JURY TRIAL HAS NOT BEEN WAIVED, WITH ANY OTHER IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY NEGOTIATED, ARE A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN OR

-3-



EXTENSION OF CREDIT EVIDENCED BY THIS NOTE AND SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER PARTY HAS IN ANY WAY AGREED WITH OR REPRESENTED TO THE OTHER THE PROVISIONS OF THIS PARAGRAPH SHALL NOT BE FULLY ENFORCED IN ALL INSTANCES.

13. Right of set-off. Borrower grants Lender a contractual possessory security interest in, and hereby assigns, conveys, delivers, pledges and transfers to Lender all of rights, title and interests in and to Borrower's accounts with Lender (whether checking, savings, or some other account) including, without limitation, all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding, however, all IRA, Keogh, and trust accounts.  Borrower authorizes Lender, to the extent permitted by applicable law, to charge or set off all sums owing on this Note against any and all such accounts.

Executed at Jacksonville, Florida on the date set forth above.

NEW LIGHT CHRISTIAN CHURCH, INC.,
A Florida Non-Profit Corporation
(f/k/a Memorial Christian Church, Inc., A Florida
Non-Profit Corporation)

By: _____

Its _____    President

-4-

Prepared by and Return to:
Lawrence V. Ansbacher
Ansbacher & Schneider, P. A.
5150 Belfort Road, Building 100
Jacksonville, Florida 32256

Doc # 2009024470, OR BK 14767 Page 1441,
Number Pages: 5
Recorded 02/02/2009 at 01:51 PM,
JIM FULLER CLERK CIRCUIT COURT DUVAL COUNTY
RECORDING $44.00 MORTGAGE DOC ST $35.00
INTANGIBLE TAX $20.00

FUTURE ADVANCE, MODIFICATION, CONSOLIDATION AND
RESTATEMENT AGREEMENT

THIS FUTURE ADVANCE, MODIFICATION, CONSOLIDATION AND RESTATEMENT AGREEMENT is made and entered into effective as of the __14th__ day of __Nov.__, 2009 (the "Effective Date") by and between NEW LIGHT CHRISTIAN CHURCH, INC., a Florida non-profit corporation, (hereinafter called "Borrower"), DONNIE L. SMITH AND SHARON Y. SMITH, (jointly and severally hereinafter called "Guarantor"), and PEOPLES FIRST COMMUNITY BANK, ("Lender").

RECITALS

A.  The Borrower did, under date of October 3, 2008, execute and deliver to Lender that certain Mortgage Note (the "Note") in the original principal sum of $143,000.00, which Note was secured by a Mortgage (the "Mortgage") by Borrower to Lender recorded in Official Records Volume 14662, page 2234, of the current public records of Duval County, Florida, which Mortgage encumbered real property as described as set forth therein ("Property").

B.  The Borrower did, as of October 3, 2008, execute and deliver to the Lender that certain Assignment of Rents and Leases recorded in Official Records Book 14662, page 2249, of the current public records of Duval County, Florida (the "Assignment of Rents and Leases").

C.  The Guarantor did, as of October 3, 2008, execute and deliver to the Lender that certain Unconditional and Irrevocable Guaranty (the "Guaranty") guaranteeing, amongst other things, the prompt payment of the Note and performance by the Borrower of the terms and provisions of any document evidencing or securing such Note.

D.  The Lender, the Borrower and the Guarantor did, as of October 3, 2008, execute that certain Loan Agreement (the "Loan Agreement").

E.  The Lender is now the owner and holder of the Note, Mortgage, Assignment of Rents, Guaranty and Loan Agreement.

F.  The Borrower is the fee simple owner of the Property.


**NOTE TO CLERK:** THIS AGREEMENT SECURES A CONSOLIDATED NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $153,000.00. INTANGIBLE TAXES IN THE AMOUNT OF $286.00 AND DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $500.50 WERE PAID WITH THE RECORDING OF THE MORTGAGE IN OFFICIAL RECORDS. BOOK 14662, PAGE 2234 SECURING THE NOTE HAVING AN ORIGINAL PRINCIPAL AMOUNT OF $143,000.00. INTANGIBLE TAXES IN THE AMOUNT OF $20.00 AND DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $35.00 ARE BEING PAID UPON THE RECORDING OF THIS AGREEMENT BASED UPON THE FUTURE ADVANCE OF $10,000.00 EVIDENCED HEREBY.

030288.C.08 Modification document.doc
Last printed 1/14/2009 4:16 PM

COMPOSITE
EXHIBIT K

G. The Borrower and the Guarantor represent and warrant to the Lender that, as of the Effective Date, the outstanding principal balance of the Note is $137,085.00, that there remains to be disbursed thereunder the sum of $5,915.00, that the outstanding principal balance, together with all unpaid interest thereon, is secured by the Mortgage and the Loan Agreement and that the same is owing and unpaid, without counterclaim, setoff or defense, and any counterclaims, setoffs or defense held by Borrower or Guarantor are hereby forever waived, released and discharged, whether known or unknown.

H. The Borrower has applied to the Lender for a future advance (the "Future Advance") in the sum of $10,000.00 and to consolidate the indebtedness evidenced by the Note and to modify certain terms of repayment thereof, subject to the terms and conditions hereinafter set forth, which credit will be secured by the lien and operation of the Mortgage.

I. As a condition of the Future Advance, the Lender has required that the total indebtedness be consolidated into one note and therefore, Borrower has executed and delivered to the Lender that certain consolidated and restated mortgage note (the "Consolidated Note") dated as of even date herewith in the original principal amount of $153,000.00 which combines, consolidates and restates the terms of the Note.

J. The parties hereto desire to amend the Note, the Mortgage, the Assignment of Rents and Leases, the Guaranty, and the Loan Agreement, (collectively the "Loan Documents") all as hereinafter set forth and provided.

NOW THEREFORE, in consideration of the premises and the mutual obligations of the parties, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1. The Recitals are incorporated herein and, by this reference, made a part hereof.

2. Pursuant to the terms of the Mortgage, the Lender has this date extended additional credit to the Mortgagor in the amount of $10,000.00, evidenced by amounts included in a consolidated mortgage note in the amount of $153,000.00 dated of even date (the "Consolidated Note"). The additional credit is intended by the parties as a future advance under the provisions of the "Future Advance Clause" of the Mortgage and under the provisions of Section 697.04, Florida Statutes. The Consolidated Note, as combined with the current outstanding principal balance of the indebtedness secured by the Mortgage, does not exceed the limitation on future advances contained in the Mortgage.

3. All monies required to be disbursed pursuant to the Loan Agreement have heretofore been disbursed by the Lender to the Borrower except for the sum of $5,915.00 which will be hereafter disbursed pursuant to the terms of the Loan Agreement. The funds represented by the future advance made to the Borrower as evidenced herein will be disbursed by the Lender to the Borrower at time of execution hereof.

4. The Guarantor has, on even date herewith, executed and delivered to the Lender that certain Restated Unconditional and Irrevocable Guaranty (the "Restated Guaranty") guaranteeing, amongst other things, the prompt payment of the Consolidated Note and performance by the Borrower of the terms and provisions of any document evidencing or securing such Consolidated Note.

5. Wherever the Loan Documents reference instruments modified herein ("Modified Loan Documents") the same shall hereafter refer to the respective Modified Loan Documents

6. The Guarantor has joined in the execution hereof for the purpose of (a) agreeing to each and every provision set forth herein and (b) ratifying and confirming the Restated Guaranty and agreeing the same shall and does remain in full force and effect.

7. Borrower and Guarantor acknowledge, represent and warrant to the Lender that:

2

      b.    Lender is under no obligation to Borrower or Guarantor to grant or make any further additional modifications, extensions or amendments to any of the documents referred to herein as well as this Agreement.

8.    Except as herein otherwise specifically provided, none of the documents referred to herein are modified or amended in any way whatsoever.

IN WITNESS WHEREOF, the parties hereto have executed this instrument effective as of the Effective Date.

Signed, sealed and delivered
in the presence of:

Print Name: CHERYL E. SASSARD

Print Name: *[signature]*
As to Borrower

NEW LIGHT CHRISTIAN CHURCH, INC.,
A Florida Non-Profit Corporation

By: *[signature]*
Donnie Smith, Its President

Address: 4216 Moncrief Road West
Jacksonville, FL  32209

"BORROWER"

Print Name: CHERYL E. SASSARD

Print Name: *[signature]*
As to Guarantor

*[signature]* (SEAL)
Donnie L. Smith

*[signature]* (SEAL)
Sharon Y. Smith

Address: 4216 Moncrief Road West
Jacksonville, FL  32209

"GUARANTOR"

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this ____ day of _____, 2009 by Donnie Smith, President of New Light Christian Church, Inc., a Florida non-profit corporation, on behalf of such corporation   He ( ) is personally known to me or ( ) has produced _____ [Florida Driver's License] as identification.

Print Name>................................
Notary Public, State of Florida

CHERYL E. SASSARD
MY COMMISSION # DD 785509
EXPIRES: June 6, 2012
Bonded Thru Notary Public Underwriters

3

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this 14th day of Jan.,
2009 by Donnie L. Smith and Sharon Y. Smith, who (✓) are personally known to me or (  ) have produced
_____ [Florida Driver's Licenses] as identification.

Print Name>:.................................
Notary Public, State of Florida

> CHERYL E. SASSARD
> MY COMMISSION # DD 765609
> EXPIRES: June 6, 2012
> Bonded Thru Notary Public Underwriters

Print Name: _____

PEOPLES FIRST COMMUNITY BANK

Print Name: _____
As to Lender

By:_____
         Its          President
Print Name:_____

Address:  1022 West 23rd Street, 6th Floor
Panama City, FL  32405

"LENDER"

STATE OF FLORIDA
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____,
by _____, _____ President of Peoples First Community Bank, a banking
corporation, on behalf of the corporation.  He/she (  ) is personally known to me or (  ) has produced
_____ (Florida Driver's License) as identification.

Print Name>:.................................
Notary Public, State of Florida

4

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this _____ day of _____,
2009 by Donnie L. Smith and Sharon Y. Smith, who ( ) are personally known to me or ( ) have
produced _____ [Florida Driver's Licenses] as
identification.

_____
Print Name>................................
Notary Public, State of Florida


_____
Print Name:

_____
Print Name:    Witnesses not
As to Lender ...    required

PEOPLES FIRST COMMUNITY BANK

By: _____
Its _____    President
Print Name: Roger Sutton

Address: 1022 West 23rd Street, 6th Floor
Panama City, FL  32405

"LENDER"


STATE OF FLORIDA
COUNTY OF  DUVAL

The foregoing instrument was acknowledged before me this _7th_day of _January_, 2009
by Roger L. Sutton, SVP    President of Peoples First Community Bank, a banking
corporation, on behalf of the corporation. He/she (x) is personally known to me or ( ) has produced
_____(Florida Driver's License) as identification.

_____
Print Name>................................
Notary Public, State of Florida

KAY T. ROGERS
Notary Public - State of Florida
My Comm. Expires Jul 1, 2012
Commission # DD 602483
Bonded Through National Notary Assn.

4

*Prepared by/Return to:*
*Lawrence V. Ansbacher*
*Ansbacher & Schneider, P. A.*
*5150 Belfort Road, Building 100*
*Jacksonville, FL 32256*

Doc # 2008257245, OR BK 14662  Page 2234,
Number Pages: 15
Recorded 10/03/2008 at 12:26 PM,
JIM FULLER CLERK CIRCUIT COURT DUVAL COUNTY
RECORDING $129.00 MORTGAGE DOC ST  $500.50
INTANGIBLE TAX $288.00

THIS IS A BALLOON MORTGAGE SECURING A VARIABLE RATE OBLIGATION.  ASSUMING THAT THE INITIAL RATE OF INTEREST WERE TO APPLY FOR THE ENTIRE TERM OF THE MORTGAGE, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY WOULD BE APPROXIMATELY $125,066.54 TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.  THE ACTUAL BALANCE DUE UPON MATURITY MAY VARY DEPENDING ON CHANGES IN THE RATE OF INTEREST.

### REAL ESTATE MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE is executed this 3rd day of October, 2008 by NEW LIGHT CHRISTIAN CHURCH, INC., A Florida Non-Profit Corporation, (f/k/a Moncrief Christian Church, Inc., a Florida non-profit corporation), (hereinafter called "Mortgagor") to PEOPLES FIRST COMMUNITY BANK, (hereinafter called "Mortgagee"), whose post office address is 1022 West 23rd Street, 6th Floor, Panama City, FL 32405.

WITNESSETH: That in consideration of the aggregate sum named in the "Note" (as hereinafter defined) together with any future advances, all as hereinafter described, and other valuable considerations, the Mortgagor does hereby grant, bargain, sell, alien, remise, release, convey and confirm unto the Mortgagee in fee simple, the land, of which the Mortgagor is now seized and possessed and in actual possession, in Duval County, State of Florida, more particularly described on Exhibit A attached and by this reference made a part hereof.

Together with all structures and improvements now and hereafter on said land and fixtures attached thereto, and all rents, issues, proceeds and profits accruing and to accrue from said premises, all of which are included within the foregoing description and the addendum thereof; also all gas, steam, electric, water, and other heating, cooking, refrigerating, lighting, plumbing, ventilating, irrigating and power systems, machines, appliances, fixtures and appurtenances owned by the Mortgagor, or included in the "Plans" (as defined in the "Loan Agreement", as hereinafter defined) for the construction of the improvements on the mortgaged property, which now are or may hereafter pertain to, or be used with, in or on said premises, even though they be detached or detachable; also, all building, improvement or construction materials, supplies and equipment hereafter delivered to said land and stored thereon contemplating installation or use in constructions thereon and all rights and interest of the Mortgagor in building permits and architectural plans and specifications relating to contemplated constructions or improvements on said land and all rights and interest of Mortgagor in present or future mortgage loan commitments pertaining to any of said land and improvements thereon.  Further, together with all of Mortgagor's right, title and interest in and to all hazard insurance required to be secured and kept in full force and effect by the Mortgagor pursuant hereto and further together with all judgments, awards of damages and settlements hereafter made resulting from actual or threatened condemnation proceedings or the taking of the mortgaged property or any part thereof under the power of eminent domain, or for any damage, (whether caused by such taking or otherwise) to the property or the improvements thereon, or any part thereof, or to any rights appurtenant thereto, including any award for change of grade or streets.

TO HAVE AND TO HOLD the same, with the tenements, hereditaments and appurtenances thereunto belonging, including any and all easements and riparian rights, and the rents, issues and profits of said mortgaged property, and the proceeds of any or all the mortgaged property which may be taken by eminent domain, unto the Mortgagee.

080288.B.12 Mortgage.doc
Last printed 10/3/2008 9:20 AM

**EXHIBIT**
"C"

AND THE MORTGAGOR covenants with the Mortgagee that the Mortgagor is indefeasibly seized of said land in fee simple; that the Mortgagor has full power and lawful right to convey said land in fee simple as aforesaid; that it shall be lawful for the Mortgagee at all times hereafter peaceably and quietly to enter upon, hold, occupy and enjoy said land; that said land and every part thereof is free from all liens and encumbrances; that the Mortgagor will make such other and further assurances to perfect the first priority lien on said land in the Mortgagee as may hereafter reasonably be required; and that the Mortgagor does hereby fully warrant the title to said land and will defend the same against the lawful claims of all persons whomsoever.

PROVIDED, ALWAYS, that if the Mortgagor shall pay unto the Mortgagee the mortgage note by the Mortgagor to the Mortgagee dated as of even date herewith in the original principal sum of **$143,000.00** (the "Note") and all interest thereon, as and when therein provided, and pay all other sums due under any other instrument securing or evidencing said indebtedness and otherwise perform, comply with and abide by every covenant, condition and stipulation of the Note and of this mortgage, then this mortgage and the estate hereby created shall cease and be void.  AND the Mortgagor does hereby covenant and agree to and with the Mortgagee that:

### ARTICLE ONE
#### Particular Covenants of the Mortgagor

1.01.    <u>Payment and Performance of Note and Mortgage</u>.  The Mortgagor will perform, observe and comply with all provisions hereof and of the Note and will duly and punctually pay to the Mortgagee the sum of money expressed in said Note with interest thereon and all other sums required to be paid by the Mortgagor pursuant to the provisions of this mortgage.

1.02.    <u>Warranties of Title</u>.  The Mortgagor hereby covenants with the Mortgagee and with any purchaser at foreclosure sale hereunder that the Mortgagor is indefeasibly seized of said land in fee simple; that the Mortgagor has full power and lawful right to mortgage and convey said land in fee simple as aforesaid; that it shall be lawful for the Mortgagee hereafter peaceably and quietly to enter upon, hold, occupy, and enjoy said land and every part thereof; that said land and every part thereof, is free from all liens and encumbrances unless otherwise specifically set forth and provided herein; that the Mortgagor will make such other and further assurances to perfect the fee simple title to said lands in the Mortgagee, or in said purchaser at foreclosure sale hereunder, as may hereafter reasonably be required; and that the Mortgagor does hereby fully warrant the title to said lands and every part thereof and will defend the same against the lawful claims of all persons whomsoever.

1.03.    <u>Escrow of Taxes and Insurance.</u>  If required by Mortgagee, Mortgagor will pay to Mortgagee, together with and in addition to the regular payment due under the Note at the same time as such payments are due under the Note and until the Note is fully paid, an amount equal to one-twelfth (1/12th) of the yearly taxes and assessments, as reasonably estimated by Mortgagee to be sufficient to enable Mortgagee to pay at least thirty (30) days before they become due, all taxes assessments, and other similar charges against the mortgaged property or any part thereof.  Such added payments shall not be, nor be deemed to be trust funds, but may be commingled with the general funds of Mortgagee, and no interest shall be due and payable in respect thereof, nor shall any accounting for such be required.  Upon demand of Mortgagee, Mortgagor agrees to deliver to Mortgagee such additional moneys as are necessary to make up any deficiencies in the amounts necessary to enable Mortgagee to pay such taxes, assessments, and similar charges within the time set forth supra.  In the event of a default by Mortgagor in the performance of any of the terms, covenants or conditions in the Note or this mortgage, Mortgagee may apply to the reduction of the sums secured hereby, in such manner as Mortgagee shall determine in its sole and exclusive discretion, any amount deposited with it under this Section, remaining to Mortgagor's credit.

If required by the Mortgagee, Mortgagor will pay to Mortgagee, together with and in addition to the regular payment due under the Note and any monthly tax deposit (as required in section 1.03 supra) at the same time as such payments are due under the Note and until the Note is fully paid, an amount equal to one-twelfth (1/12th) of the yearly premiums for insurance on the mortgaged property.  Such amount shall be used by Mortgagee to pay such insurance premiums when due.  Such added payments shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of Mortgagee, and no interest shall be due and payable in respect thereof, nor shall any accounting for such be required.  Upon

2

demand of Mortgagee, Mortgagor agrees to deliver to Mortgagee such additional moneys as are necessary to make up any deficiencies in the amounts necessary to enable Mortgagee to pay such insurance premiums when due. In the event of a default by Mortgagor in the performance of any of the terms, covenants or conditions in the Note or this mortgage, Mortgagee may apply to the reduction of the sums secured hereby, in such manner as Mortgagee shall determine in its sole and exclusive discretion, any amount paid to Mortgagee in accordance herewith, remaining to Mortgagor's credit.

1.04.    Taxes and Liens.

(a)    The Mortgagor will pay promptly, when and as due (and in any event prior to the expiration of the year in which any ad valorem taxes shall become due and payable), and will promptly upon demand exhibit to the Mortgagee receipts for the payment of all taxes, assessments, water rates, dues, charges, fines and impositions of every nature whatsoever imposed, levied or assessed upon or against the mortgaged property or any part thereof, or upon the interest of the Mortgagee in the mortgaged property as well as all income taxes, assessments and other governmental charges lawfully levied and imposed by the United States of America or any state, county, municipality or other taxing authority upon the Mortgagor or in respect of the mortgaged property or any part thereof, or any charge which, if unpaid, would become a lien or charge upon the mortgaged property prior to or equal to the lien of this mortgage for any amounts secured hereby or would have priority or equality with this mortgage in distribution of the proceeds of any foreclosure sale of the mortgaged property, or any part thereof.

(b)    The Mortgagor will pay to the Mortgagee all documentary stamps and intangible tax which may from time to time be required to be paid on account of this mortgage or the Note and the Mortgagor shall pay the same to the Mortgagee upon demand. This liability on the part of the Mortgagor shall be borne by the Mortgagor irrespective of whether the obligation to pay such taxes shall be assessed against the Mortgagee.

(c)    The Mortgagor will not suffer any mechanics', laborers', statutory or other lien which might or could be prior or equal to the lien of the mortgage to be created or to remain outstanding upon any of the mortgaged property.

(d)    In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation subsequent to the date hereof or subsequent interpretation of any existing municipal, state or federal law which in any manner changes or modifies the law now in force governing the taxation of mortgages or debts secured by mortgages so as to impose a tax upon Mortgagee or the owners and holders of this mortgage, any such taxes or charges paid by Mortgagee as a result thereof shall be reimbursed by the Mortgagor. Upon failure of the Mortgagor so to do following 60 days written request by the Mortgagee, the entire balance of the principal sum secured by this mortgage and all interest accrued thereon shall without further notice become due and payable forthwith at the option of the Mortgagee. After receiving such notice requesting such reimbursement, Mortgagor may, at Mortgagor's option, at any time before default, elect to pay the balance of the principal and interest due on the Note without penalty. In the event that such taxes and assessments are not so paid and paid receipts therefore are not so provided to Mortgagee within the time specified, Mortgagor shall pay to Mortgagee an administration fee upon demand (and in addition to all other remedies available to Mortgagee on account of such default) and in no event not later than the next payment made under the Note.

1.05.    Insurance

(a)    The Mortgagor will procure for, deliver to, and maintain for the benefit of, the Mortgagee, during the life of this mortgage, insurance policies in such amounts as the Mortgagee shall require, insuring the mortgaged property (including Mortgagee's interest in and to property subject to lease agreements or outstanding purchase contracts, as Mortgagee's interest may appear) (i) against fire, extended coverage and such other insurable hazards, casualties and contingencies (collectively "Hazard Insurance") as the Mortgagee may require including, if available, Federal Flood Insurance and (ii) on account of public liability and property insurance coverage including personal injury liability and contractual liability with respect to the mortgaged property in form and amount satisfactory to the Mortgagee and with initial minimum limits of $1,000,000.00 on account of bodily injury to, or death of, one person and $1,000,000.00 on account of bodily injury to, or death of, more than one person, as a result of any accident or disaster and with property damage insurance coverage in the minimum amount of $1,000,000.00. The form of such policies and the companies issuing them shall be acceptable to the

3

Mortgagee. All casualty policies shall contain a New York standard, non-contributory mortgagee endorsement making losses payable to the Mortgagee. The coverage under such policies shall be limited to the improvements now or hereafter erected on the land mortgaged hereby. At least 30 days prior to the expiration date of all such policies, renewals thereof satisfactory to the Mortgagee shall be delivered to the Mortgagee. The Mortgagor shall deliver to the Mortgagee receipts evidencing the payment of all such insurance policies and renewals. In the event that such renewals and paid receipts are not provided within the time specified, Mortgagor shall pay to Mortgagee an administration fee upon demand (and in addition to all other remedies available to Mortgagee on account of such default) and in no event not later than the next payment made under the Note. The delivery of the insurance policies shall constitute an assignment, as further security, of all unearned premiums. In the event of the foreclosure of this mortgage or any other transfer of title to the mortgaged property in extinguishment of the indebtedness secured hereby, all right, title and interest of the Mortgagor in and to all insurance policies then in force shall pass to the purchaser or grantee.

(b) The Mortgagee is hereby authorized and empowered, at Mortgagee's option, to adjust or compromise any loss under any insurance policies on the mortgaged property, and to collect and receive the proceeds from any such policy or policies. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Mortgagee instead of to Mortgagor and Mortgagee jointly.

(c) After deducting from said insurance proceeds any expenses necessarily incurred by Mortgagee in the collection or handling of funds received on account of such insurance policies, the Mortgagee shall apply the net proceeds, at Mortgagee's option, either toward restoring the improvements or as a credit on any portion of the mortgage indebtedness elected by Mortgagee, whether then matured or to mature in the future, or at the option of the Mortgagee said sums either wholly or in part may be paid over to the Mortgagor without affecting the lien of the mortgage for the full amount secured hereby before such payment took place. Notwithstanding the foregoing, in the event each of the following conditions is satisfied, Mortgagee shall make the net proceeds as a result of any fire or other casualty, after deduction of its reasonable costs and expenses (including, without limitation, architects', attorneys', engineers' and other consultants' and professionals' fees and disbursements), if any, in connection therewith (the "Net Proceeds") available to Mortgagor for restoration in accordance with the provisions of subsection (d) provided, however:

(i) no event of default shall have occurred and be continuing under the Note secured hereby or any of the other loan documents;

(ii) Mortgagor shall commence such restoration as soon as reasonably practical and shall diligently pursue the same to satisfactory completion in a good and workmanlike manner in accordance with plans and specifications therefore approved by Mortgagee and in compliance with all governing governmental laws, rules, ordinances and regulations;

(d) In the event the conditions set forth in subsection (c) for making the Net Proceeds available have been met by the Mortgagor, then (A) such Net Proceeds shall be held by the Mortgagee and, until disbursed as provided in this subsection, shall constitute additional security on account of the Note secured hereby and (B) such Net Proceeds shall be disbursed as hereafter provided:

(i) The Net Proceeds shall be disbursed by Mortgagee to Mortgagor monthly during the course of restoration, upon receipt of evidence satisfactory to Mortgagee that (A) all materials installed and work and labor performed (except to the extent that they are to be paid for out of the requested disbursement) in connection with the restoration have been paid for in full, and (B) there exist no notices of pendency, stop orders, mechanic's or materialman's liens or notices of intention to file same, or any other liens or encumbrances of any nature whatsoever on the mortgaged property arising out of the restoration which have not either been fully bonded to the satisfaction of Mortgagee and discharged of record or in the alternative fully insured against to the satisfaction of Mortgagee by the title company insuring the lien of this Mortgage.

(ii) All plans and specifications in connection with the restoration shall be subject to prior review and approval in all respects by Mortgagee and, if the Net Proceeds shall exceed $25,000, by an independent consulting engineer selected by Mortgagee (the "Casualty Consultant"), which approval shall not be unreasonably withheld or delayed. Mortgagee shall have the use of the plans and specifications and all permits, licenses and approvals required or obtained in connection with the

4

restoration. All costs and expenses incurred by Mortgagee in connection with making the Net Proceeds available for the restoration including, without limitation, reasonable counsel fees and disbursements and the Casualty Consultant's fees, shall be paid by Mortgagor.

(iii)    Until such time as the restoration has been completed and Mortgagee shall have received copies of any and all final certificates of occupancy or other certificates, licenses and permits required for the ownership, occupancy and operation of the mortgaged property in accordance with all applicable laws, Mortgagee shall be entitled to retain, and not disburse, up to ten percent (10%) of the cost of the restoration, as determined by Mortgagee or the Casualty Consultant (the "Casualty Retainage"). Mortgagor hereby covenants diligently to seek to obtain any such certificates, licenses and permits. Promptly after the completion of the restoration and delivery of such certificates, licenses and permits in accordance with the provisions hereof, and provided no event of default shall then be continuing, Mortgagee shall disburse the Casualty Retainage to Mortgagor, subject, however, to Mortgagee's right to apply any excess proceeds remaining after the completion of the restoration to the payment of the Note secured hereby.

(iv)    If at any time the Net Proceeds or the undisbursed balance thereof shall not, in the opinion of Mortgagee, be sufficient to pay in full the balance of the costs which are estimated by the Mortgagee or the Casualty Consultant to be incurred in connection with the completion of the restoration, Mortgagor shall deposit the deficiency with Mortgagee, which shall thereafter be treated as Net Proceeds, before any further disbursement of the Net Proceeds shall be made.

(v)    The excess, if any, of the Net Proceeds remaining after the Casualty Consultant certifies to Mortgagee that the restoration has been completed in accordance with the provisions of this Section 1.05, and the receipt by Mortgagee of evidence satisfactory to Mortgagee that all costs incurred in connection with the Restoration have been paid in full, shall, at the election of the Mortgagee, either be retained and applied by Mortgagee toward the payment of the Note secured hereby, whether or not then due and payable in such order, priority and proportions as Mortgagee in its discretion shall deem proper or paid over to the Mortgagor without affecting the lien of the mortgage for the full amount secured hereby before such payment took place.

1.06.    Condemnation.  If all or any part of the mortgaged property shall be damaged or taken through condemnation (which term when used in this mortgage shall include any transfer by private sale in lieu thereof), either temporarily or permanently, the Mortgagee, at Mortgagee's option, shall be entitled to all or such part of the compensation award to the extent that the Mortgagee's security may have been impaired. In determining whether Mortgagee's security has been impaired the parties shall take into consideration the relationship between the unpaid principal balance of the indebtedness and the value of the mortgaged property immediately prior to such taking, and the relationship between the value of the mortgaged property, including restoration, repairs or alterations in the event of a partial taking, after such taking and said unpaid mortgage indebtedness, assuming in both instances that the mortgage at the time of such consideration is current and not otherwise in default. In the event of an application of all or a part of any award in condemnation to the mortgage indebtedness as herein provided, such application shall be to principal in inverse order of maturity without penalty.

1.07.    Payment of Casualty and Condemnation Proceeds While Mortgage in Default.  The Mortgagor shall not be entitled to receive any insurance proceeds payable by reason of loss or damage to the mortgaged property by reason of fire or casualty nor the proceeds from any taking in condemnation of all or part of the mortgaged property if an event of default has occurred and be continuing. In such event the Mortgagee may, at Mortgagee's option, apply all or any part of such proceeds toward payment of the mortgage indebtedness provided that such application shall be applied without penalty to the Mortgagor.

1.08.    Care of the Property.

(a)    The Mortgagor will preserve and maintain the mortgaged property in good condition and repair and will not commit or suffer any waste thereof. For the purposes hereof, removal of soil, utilization as a borrow pit, as well as cutting of trees shall be deemed waste. The Mortgagor will not do or suffer to be done anything which will increase the risk of fire or other hazard to the mortgaged property or any part thereof.

5

(b)    Except as otherwise provided herein, no buildings, fixture, personal property, or other part of the mortgaged property shall be removed, demolished or substantially altered without the prior written consent of the Mortgagee. The Mortgagor may sell or otherwise dispose of, free from the lien of this mortgage, furniture, furnishings, equipment, tools, appliances, machinery, fixtures or appurtenances, subject to the lien hereof, which may become worn out, undesirable, obsolete, disused or unnecessary for use in the operation of the mortgaged property, upon replacing the same by, or substituting for the same, other furniture, equipment, tools, appliances, machinery, fixtures, or appurtenances not necessarily of the same character, but of at least equal value to the Mortgagor and costing not less than the amount realized from the property sold or otherwise disposed of, which shall forthwith become, without further action, subject to the lien of this mortgage.

(c)    If the mortgaged property or any part thereof is damaged by fire or any other cause, the Mortgagor will give immediate written notice of the same to the Mortgagee.

(d)    The Mortgagee is hereby authorized to enter upon and inspect the mortgaged property at any time during normal business hours, during the life of this mortgage for the purpose of determining the condition of the lands and improvements and other property subject to this mortgage or inspecting any repairs thereto.

(e)    The Mortgagor will promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority affecting the mortgaged property or any part thereof.

(f)    If any work required to be performed for restoration, repair or alteration of the mortgaged property shall involve an estimated expenditure of more than $10,000.00, no such work shall be undertaken until plans and specifications therefor, satisfactory to the Mortgagee have been submitted to and approved by the Mortgagee.

1.09.    Security Agreement. This mortgage deed shall be construed as a mortgage of both real and personal property and fixtures included among the mortgaged property and it shall also constitute and serve as a "Security Agreement" and shall create a security interest under the Uniform Commercial Code of the State of Florida. THE MORTGAGOR HEREBY AUTHORIZES THE MORTGAGEE TO FILE FINANCING STATEMENTS COVERING THE PERSONAL PROPERTY AND FIXTURES INCLUDED AMONG THE MORTGAGED PROPERTY WITH ALL APPROPRIATE FILING OFFICES. Further, at any time, and from time to time, upon request by the Mortgagee, the Mortgagor will make, execute and deliver or cause to be made, executed and delivered, to the Mortgagee, and where appropriate to cause to be recorded and/or filed and from time to time thereafter to be re-recorded and/or refiled at such time and in such offices and places as shall be deemed desirable by the Mortgagee any and all such other and further mortgages, instruments of further assurance, certificates, financing statements, and other documents as may, in the opinion of the Mortgagee, be necessary or desirable in order to effectuate, complete, or perfect, or to continue and preserve (a) the obligation of the Mortgagor under the Note and this mortgage, and (b) the lien of this mortgage as a lien upon all of the mortgaged property prior in dignity to any and all other liens thereon except if the same are herein otherwise specifically provided for and described. Upon any failure by the Mortgagor so to do, the Mortgagee may make, execute, record, file, re-record and/or refile any and all such mortgages, instruments, certificates, financing statements and documents for and in the name of the Mortgagor, and the Mortgagor hereby irrevocably appoints the Mortgagee the agent and attorney-in-fact of the Mortgagor to do so. The lien hereof will automatically attach, without further act, to all after acquired property attached to and/or used in the operation of the mortgaged property or any part thereof.

1.10.    Expenses. The Mortgagor will pay or reimburse the Mortgagee for all costs, fees, charges and expenses of every kind, including without limitation the cost of an abstract of title to said lands and of a title insurance commitment to insure fee simple title to the mortgaged property upon consummation of the foreclosure suit, found to be convenient or expedient in connection with any suit for the foreclosure of this mortgage, and also including reasonable attorneys' fees incurred or expended at any time (before trial, at trial or on appeal and in any bankruptcy proceeding) by the Mortgagee because of the failure of the Mortgagor to perform, comply with and abide by all or any of the covenants, conditions and stipulations of the Note, or this mortgage, and in the foreclosure of this mortgage and in collecting the amounts secured hereby with or without legal proceedings, and in each such case hereby with or without legal proceedings, and in each such case with interest; and to reimburse the Mortgagee for every payment made for any

6

such purpose with interest from date of every such payment at the rate provided in the Note; such payments and obligations, with interest thereon as aforesaid shall be secured by the lien hereof.

1.11.    Mortgagee's Performance Upon Default.  If the Mortgagor shall default in the payment of any tax or other imposition, in Mortgagor's obligation to furnish insurance hereunder or performance or observance of any other covenant, condition or term in this mortgage, the Mortgagee may perform or observe the same, and all payments made or costs or expenses incurred by the Mortgagee in connection therewith, shall be secured hereby with interest thereon at the highest lawful rate unless provided otherwise in the Note.  The Mortgagee is hereby empowered to enter and to authorize others to enter upon the mortgaged property or any part thereof for the purpose of performing or observing any such defaulted covenant, condition or terms without thereby becoming liable to the Mortgagor or any person in possession holding under the Mortgagor.

1.12.    Estoppel Affidavits.  The Mortgagor, within 5 days upon request in person or within 10 days upon request by mail, shall furnish to the Mortgagee a status letter setting forth the amount owing on the Note, when the next payment is owing thereon, and whether any offsets or defenses exist against the indebtedness secured by this Mortgage.

1.13.    Mortgage Shall Secure Future Advances.  In addition to all other indebtedness secured by the lien on this mortgage, this mortgage shall secure also and constitute a lien on the mortgaged property for all future advances made by the Mortgagee to the Mortgagor for any purpose, including without limitation pursuant to the terms of any loan or credit agreement, within 20 years from the date hereof to the same extent as if such future advances were made on the date of the execution of this mortgage.  Any such advances may be made at the option of the Mortgagee.  The total amount of the indebtedness referred to in the first sentence of this paragraph that may be secured by this mortgage may increase or decrease from time to time, but the total unpaid balance of such indebtedness secured at any one time by this mortgage shall not exceed ten times the principal amount stated in the Note plus interest thereon and any disbursements made by the Mortgagee, for the payment of taxes, levies, or insurance on the property encumbered by this mortgage, with interest on such disbursements.

1.14.    Leases Affecting Mortgaged Property.  The Mortgagor will comply with and observe Mortgagor's obligations as landlord under all leases affecting the mortgaged property or any part thereof.

1.15.    Conveyance of Mortgaged Property Without Consent of Mortgagee.  If a conveyance by deed or agreement for deed, or lease in excess of one year, should be made by the Mortgagor of the premises herein described, or any part thereof, without the written consent of the Mortgagee, then and in that event, and at the option of the Mortgagee and without notice, all sums of money secured hereby shall immediately and concurrently with such conveyance become due and payable and in default.

1.16.    Right of Setoff.  Mortgagor grants Mortgagee a contractual possessory security interest in, and hereby assigns, conveys, delivers, pledges and transfers to Mortgagee all Mortgagor's right, title and interest in and to, Mortgagor's accounts with Mortgagee (whether checking, savings, or some other account) including, without limitation, all accounts held jointly with someone else and all accounts Mortgagor may open in the future, excluding, however, all IRA, Keogh, and trust accounts.  Mortgagor authorizes Mortgagee, to the extent permitted by applicable law, to charge or set off all sums owing on the Note against any and all such accounts.

1.17.    Appraisals.  Mortgagor covenants and agrees that Mortgagee may obtain an appraisal of the mortgaged property when required by the regulations of the Federal Reserve Board or the Office of the Comptroller of the Currency or at such other times as Mortgagee may reasonably require, but in any event, not more frequently than annually unless required by the regulations of the Federal Reserve Board or the Office of the Comptroller of the Currency.  Such appraisals shall be performed by an independent third party appraiser selected by the Mortgagee.  The cost of such appraisal shall be borne by Mortgagor.  If requested by Mortgagee, Mortgagor shall execute an engagement letter addressed to the appraiser selected by Mortgagee.  Mortgagor's failure or refusal to sign such an engagement letter however shall not impair Mortgagee's right to obtain such an appraisal.  Mortgagor agrees to pay the cost of such appraisal within ten (10) days after receiving an invoice for such appraisal.

1.18.    Transfer of Ownership in the Mortgagor.  If a transfer of control in the Mortgagor should be made by Mortgagor including, without limitation, the failure of Donnie L. Smith to serve as President of the

7

Mortgagor, without the written consent of the Mortgagee, then and in that event, and at the option of the Mortgagee and without notice, all sums of money secured hereby shall immediately and concurrently with such conveyance become due and payable and in default.

1.19.    Prohibited Person Compliance.    Mortgagor warrants, represents and covenants neither Mortgagor, any guarantor nor any of their respective affiliated entities are or will be an entity or person (i) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("EO13224"); (ii) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("OFAC") most current list of "Specially Designated Nationals and Blocked Persons," (published from time to time in various mediums including without limitation the OFAC website, www.treas.gov/offices/enforcement/ofac/sdn); (iii) who commits, threatens to commit or supports "terrorism", as that term is defined in EO13224; or (iv) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in subparts [i] – [iv] above are herein referred to as a "Prohibited Person"). Mortgagor covenants and agrees that neither Mortgagor, any guarantor nor any of their respective affiliates entities will (i) conduct any business, nor engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services, to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224. Mortgagor further covenants and agrees to deliver (from time to time) to Mortgagee any such certification or other evidence as may be requested by Mortgagee, in its sole and absolute discretion, confirming that (i) neither Mortgagor nor any guarantor are a Prohibited Person and (ii) neither Mortgagor nor any guarantor have engaged in any business, transaction or dealings with a Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods or services, to or for the benefit of a Prohibited Person.

1.20.    Prior Mortgage.    This Mortgage is subject and subordinate to a prior mortgage encumbering Parcel 1 described on Exhibit A attached, recorded in Official Records Book 11650, Page 1968, of the current public records of Duval County, Florida, as modified, (the "First Mortgage").

On default or failure on the part of the Mortgagor herein to pay when due any amounts due under said First Mortgage or upon failure to perform all the conditions, covenants and requirements of said First Mortgage, each and all of the several amounts herein secured shall, upon the option of the Mortgagee, immediately become due and payable, without any notice of any kind to the Mortgagor, and should any default be made in the payment of any installment of principal or of the interest on said First Mortgage, the Mortgagee may pay such installment of principal or such interest and the full amount of each and every such payment shall be immediately due and payable and shall be secured by the lien of this Mortgage.

## ARTICLE TWO
### Defaults

2.01.    Event of Default.    The terms "event of default" and "default" are used interchangeably, and wherever used in the mortgage, shall mean any one or more of the following events:

(a)    Failure by the Mortgagor to pay as and when due (or within the period of time permitted in the Note) and payable any installments of principal or interest; or

(b)    The filing by the Mortgagor of a voluntary petition in bankruptcy or the Mortgagor's adjudication as a bankrupt or insolvent, or the filing by the Mortgagor of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for Mortgagor under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or the Mortgagor's seeking or consenting to or acquiescence in the appointment of any trustee, receiver or liquidator of the Mortgagor or of all or any substantial part of the mortgaged property or all or any of the rents, revenues, issues, earnings, profits or income thereof or the making of any general assignment for the benefit of creditors, or the admission in writing of Mortgagor's inability to pay Mortgagor's debts generally as they become due; or

(c)    The entry by a court of competent jurisdiction of an order, judgment or decree approving a petition filed against the Mortgagor seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, which order, judgment or decree

8

remains unvacated and unstayed, for an aggregate of 60 days (whether or not consecutive) from the date of entry thereof, or the appointment of any trustee, receiver or liquidator of the Mortgagor or of all or any substantial part of the mortgaged property or of any or all of the rents, revenues, issues, earnings, profits or income thereof without the consent or acquiescence of the Mortgagor, which appointment shall remain unvacated and unstayed for an aggregate of 60 days (whether or not consecutive); or

(d)        Mortgagor's (i) failure to duly observe any other covenant, condition or agreement; or (ii) breach of any warranty or misrepresentation, of this mortgage, or the Note or any other document or agreement executed in connection with the loan evidenced by the Note (and, if a cure period is therein provided, failure to cure the same within such period;Dissolution of Mortgagor; or

Demise or incapacitation of Donnie L. Smith or Sharon Y. Smith (jointly and severally the "Guarantors"), if within 60 days after Mortgagee's notice, Mortgagor fails to provide substitute collateral and/or guarantees acceptable to Mortgagee.

2.02.    Acceleration of Maturity. If an event of default shall have occurred, the Mortgagee may declare the entire principal amount of the Note then unpaid, and the interest accrued thereon to be due and payable immediately, and upon such declaration such principal and interest shall forthwith become and be due and payable, as fully and to the same effect as if the date of such declaration was the date originally specified for the maturity of the unpaid balance of the Note. Unless specifically stated otherwise in the Note, interest shall accrue on all outstanding funds owed after default and continuing post judgment at the highest applicable lawful rate

2.03.    Receiver. If an event of default shall have occurred and be continuing, Mortgagee shall be entitled, as a matter of strict right and without regard to the value or occupancy of the security, to have a receiver appointed to enter upon and take possession of the premises, collect the rents and profits therefrom and apply the same as the court may direct, such receiver to have all the rights and powers permitted under the laws of Florida. The expenses, including receiver's fees, counsel fees, costs and agent's compensation, incurred pursuant to the powers herein contained shall be secured hereby. The right to enter and take possession of said property, to manage and operate the same, to collect the rents, issues and profits thereof, whether by a receiver or otherwise, shall be cumulative to any other right or remedy hereunder or afforded by law, and may be exercised concurrently therewith or independently thereof. Mortgagee shall be liable to account only for such rents, issues and profits actually received by Mortgagee.

2.04.    Mortgagee's Power of Enforcement. If an event of default shall have occurred and be continuing, the Mortgagee may either with or without entry or taking possession as hereinabove provided or otherwise, proceed by suit or suits at law or in equity or both, or by any other appropriate proceeding or remedy (a) to enforce payment of the Note or any part thereof or the performance of any term hereof or any other right, (b) to foreclosure this mortgage for non-payment of the mortgage indebtedness including the failure to pay any single installment and to sell, as an entirety or in separate lots or parcels, the mortgaged property under the judgment or decree of a court or courts of competent jurisdiction, (c) and in the event of a foreclosure and sale of the mortgaged property to sue at law or equity for any resulting deficiency as may be allowed at law or equity, and (d) to pursue any other remedy available to Mortgagee, all as the Mortgagee shall deem most effectual for such purposes. The Mortgagee may take action either by such proceedings or by the exercise of Mortgagee's powers with respect to entry or taking possession as the Mortgagee may determine, or both, all as permitted by lawand to foreclose this mortgage as to any parcel(s) described on Exhibit A without then foreclosing as to any other parcel(s) described on Exhibit A, but without waiving the right to thereafter foreclose as to such other parcel(s) not foreclosed.

2.05.    Leases. The Mortgagee, at the Mortgagee's option, is authorized to foreclose this mortgage subject to the rights of any tenants of the mortgaged property, and the failure to make any such tenants parties defendant to any such foreclosure proceeding and to foreclose Mortgagor's rights will not be, nor be asserted to be by the Mortgagor, a defense to any proceeding instituted by the Mortgagee to collect the sums secured hereby, or any deficiency remaining unpaid after the foreclosure sale of the mortgaged property.

2.06.    Purchase by Mortgagee. Upon any such foreclosure sale, pursuant to judicial proceedings, the Mortgagee may bid for and purchase the mortgaged property and, upon compliance with the terms of

9

sale, may hold, retain, possess and dispose of such property in Mortgagee's own absolute right without further accountability.

2.07.  Suits to Protect the Mortgaged Property.  The Mortgagee shall have power (a) to institute and maintain such suits and proceedings as Mortgagee may deem expedient to prevent any impairment of the mortgaged property by any acts which may be unlawful or any violation of the mortgage (b) to preserve or protect Mortgagee's interests in the mortgaged property and in the income, revenues, rents and profits arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of, or compliance with, such enactment, rule or order would impair the security hereunder or be prejudicial to the interests of the Mortgagee.

2.08.  Delay or Omission No Waiver.  No delay or omission of the Mortgagee or of any holder of the Note to exercise any right, power or remedy accruing upon any default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such default, or acquiescence therein; and every right, power and remedy given by this mortgage to the Mortgagee may be exercised from time to time and as often as may be deemed expedient by the Mortgagee.  Acceptance by Mortgagee of any partial payment shall not constitute a waiver by Mortgagee of any default and Mortgagee may elect to hold such partial payment in suspense without application to funds owing until payment in full has been received.

2.09.  No Waiver of One Default to Affect Another, etc.  No waiver of any default hereunder shall extend to or shall affect any subsequent or any other then existing default or shall impair any rights, powers or remedies consequent thereon.  If the Mortgagee (a) grants forbearance or an extension of time for the payment of any sums secured hereby; (b) takes other or additional security for the payment thereof; (c) waives or does not exercise any right granted herein or in the Note; (d) releases any part of the mortgaged property from the lien of the mortgage or otherwise changes any of the terms of the Note or mortgage; (e) consents to the filing of any map, plat, or replat thereof; (f) consents to the granting of any easement thereon; or (g) makes or consents to any agreement, subordinating the lien or charge hereof; any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, mortgage or otherwise of the Mortgagor or any subsequent purchaser of the mortgaged property or any part thereof, or any maker, co-signer, endorser, surety or guarantor; nor shall any such act or omission preclude the Mortgagee from exercising any right, power or privilege herein granted or intended to be granted in the event of any other default then made or of any subsequent default, nor, except as otherwise expressly granted or intended to be granted in the event of any other default then made or of any subsequent default, nor, except as otherwise expressly provided in an instrument or instruments executed by the Mortgagee, shall the lien of this mortgage be altered thereby.  In the event of the sale or transfer by operation of law or otherwise of all or any part of the mortgaged property, the Mortgagee without notice to any person or entity is hereby authorized and empowered to deal with any such vendee or transferee with reference to the mortgaged property or the indebtedness secured hereby, or with reference to any of the terms or conditions hereof, as fully and to the same extent as Mortgagee might deal with the original parties hereto and without in any way releasing or discharging any of the liabilities or undertakings hereunder.

2.10.  Remedies Cumulative.  No right, power or remedy conferred upon or reserved to the Mortgagee by this mortgage is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

ARTICLE THREE
Miscellaneous Provisions

3.01.  Successors and Assigns Included in Parties.  Whenever, in this mortgage one of the parties hereto is named or referred to, the successors and assigns of such party shall be included, and all covenants and agreements contained in this mortgage by or on behalf of the Mortgagor or by or on behalf of the Mortgagee shall bind and inure to the benefit of their respective successors, heirs, legal representatives and assigns, whether so expressed or not.

3.02.  Notices.  Any notice, demand or other instrument authorized by this mortgage to be served on or given to the Mortgagor may be served on or given to the Mortgagor, addressed to the Mortgagor at the

10

address set forth on the Note, or such other address as may hereafter be furnished in writing to the Mortgagee by the Mortgagor in the manner set forth in this paragraph. In this regard the Mortgagor covenants and agrees to give immediate notice by United States certified mail, return receipt requested, to the Mortgagee of any conveyance, transfer, or change of ownership of the premises, and to pay a reasonable fee to the Mortgagee to cover the expense of changing records. Such notice shall be addressed to the Mortgagee, addressed to the Mortgagee at the address of the Mortgagee set forth in the Note, or to such other address as the Mortgagee shall hereafter direct in writing. Notwithstanding anything in this instrument to the contrary, all requirements of notice shall be deemed inapplicable if Mortgagee is prevented from giving such notice by bankruptcy or any other applicable law. In such event, the cure period, if any, shall then run from the occurrence of the event or condition of default rather than from the date of notice.

3.03.   Headings, etc.   The headings of the articles, sections, paragraphs and subdivisions of this mortgage are for convenience of reference only, are not to be considered a part hereof, and shall not limit or otherwise affect any of the terms hereof.

3.04.   No Excess Over Maximum Contract Rate of Interest.   Notwithstanding any of the provisions of this mortgage or of the obligations hereby secured, it is expressly agreed that the amounts payable under this mortgage or any other payments which would be considered as interest or other charge for the use or forbearance of money shall not exceed the maximum contract rate of interest permitted by law, as the same may be preempted by Federal Statutes, computed on the balance of the principal from time to time outstanding and unpaid; and in the event the provisions of any of said instruments referred to above in this paragraph with respect to the payment of interest or other payments in the nature of or which might be considered as interest or other charge for the use or forbearance of money would or shall result in exceeding such limitation, then the excess over the maximum interest allowed by law, as the same may be preempted by Federal Statutes, on the payments of said principal from time to time outstanding and unpaid shall not be payable and the amount otherwise payable shall be reduced by the excess, so that such limitation will not be exceeded; and if any such payment actually made shall result in any such limitation being exceeded, the amount of the excess shall be refunded by the Mortgagee to the Mortgagor.

3.05.   Invalid Provisions to Affect No Others.   In case any one or more of the covenants, agreements, terms or provisions contained in this mortgage or in the Note shall be invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained herein and in the Note shall be in no way affected, prejudiced or disturbed thereby.

3.06.   Changes, etc.   Neither this mortgage nor the Note, or any term thereof may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. Any agreement hereafter made by the Mortgagor and Mortgagee relating to this mortgage or said Note shall be superior to the right of the holder or any intervening lien or encumbrance.

3.07.   Loan Agreement.   This mortgage is made contemporaneously with a Loan Agreement between the Mortgagor, the Mortgagee and the Guarantors (the "Loan Agreement"). Disbursements on account of the Note shall be made as provided in the Loan Agreement. Any breach of the Loan Agreement by the Mortgagor or any Guarantor shall, at the option of the Mortgagee, its successors and assigns, constitute a default under this mortgage and the obligation thereby secured, entitling the Mortgagee, its successors and assigns, to all remedies otherwise available in case of default.

3.08.   Satisfaction of Mortgage.   At such time as Mortgagor shall become entitled to a satisfaction of this Mortgage, then Mortgagor shall be responsible to pay the cost of recording such Satisfaction of this Mortgage.

3.09.   Hazardous Waste.   Mortgagor represents and warrants to Mortgagee that: (i) no asbestos, oil, petroleum, or chemical liquid or solids, liquid or gaseous products, or hazardous or toxic substances, within the definition of any applicable federal, state or local statute or regulation, are now stored or otherwise located on the mortgaged property or on any adjacent and contiguous real property in which Mortgagor or any affiliate has an interest other than as permitted in the immediate succeeding paragraph of this Section; (ii) no release of any such hazardous or toxic substance has occurred on the mortgaged property or any adjacent and contiguous real property in which Mortgagor or any affiliate has an interest; (iii) no part of the mortgaged property or any adjacent and contiguous real property in which Mortgagor or

11

any affiliate has an interest, including the groundwater located thereon, is presently contaminated by any hazardous or toxic substance; and (iv) Mortgagor has not received any notice from any governmental agency or authority or from any tenant under a lease of all or of any portion of the mortgaged property with respect to any release of hazardous or toxic materials onto the mortgaged property or adjacent and contiguous parcels of real property in which Mortgagor or any affiliate has an interest.

Mortgagor further covenants and agrees with Mortgagee that: (i) all hazardous or toxic substances, within the definition of any applicable statute or regulation, which may be used by any person for any purpose upon the mortgaged property shall be used or stored thereon only in a safe and approved manner, in accordance with all industrial standards and all laws, regulations and requirements for such storage promulgated by any federal, state or local governmental agency or authority; (ii) the mortgaged property will not be used for the principal purpose of storing such substances; and (iii) no such storage or use will otherwise be allowed on the mortgaged property which will cause, or increase the likelihood of causing, the release of such hazardous or toxic substances onto the mortgaged property.

Mortgagor hereby agrees to indemnify, defend and save and hold Mortgagee harmless of and from all loss, cost (including reasonable attorneys' fees, whether suit be brought or not and including an appeal, if any), liability and damage whatsoever incurred by Mortgagee arising out of or by reason of any violation of any applicable federal, state or local statute or regulation for the protection of the environment which occurs upon the mortgaged property, or by reason of the imposition of any governmental lien for the recovery of environmental clean-up costs expended by reason of such violation; provided that, to the extent that Mortgagor is strictly liable under any such statute or regulation, Mortgagor's obligation to Mortgagee under this indemnity shall likewise be without regard to fault on the part of Mortgagor with respect to the violation of law which results in liability to Mortgagee. The provisions of this Section shall continue in effect after the satisfaction of the indebtedness secured hereby, whether by voluntary repayment of the indebtedness secured hereby or through the enforcement of the Note, or otherwise.

If an event of default shall occur, Mortgagor shall permit such persons as Mortgagee may designate ("Site Reviewers") to visit the mortgaged property and perform environmental site investigations and assessments ("Site Assessments") on the mortgaged property for the purpose of determining whether there exists on the mortgaged property any environmental condition which could result in any liability, cost or expense to the owner or occupier of the mortgaged property relating to hazardous substances. Such Site Assessments may include both above and below the ground testing for environmental damage or the presence of hazardous substances on the mortgaged property and such other tests on the mortgaged property as may be necessary to conduct the Site Assessments in the opinion of the Site Reviewers. Mortgagor will supply to the Site Reviewers such historical and operational information regarding the mortgaged property as may be reasonably requested by the Site Reviewers to facilitate the Site Assessments and will make available for meetings with the Site Reviewers appropriate personnel having knowledge of such matters.

If an event of default has not occurred, Mortgagee may, if Mortgagee has reason to believe that any of Mortgagor's representations, covenants, agreements, warranties or certifications are untrue or have been violated or if required by any governing governmental entity, at Mortgagor's expense, cause a Site Assessment to be conducted, and Mortgagor shall cooperate with the same, as above provided.

Notwithstanding the foregoing, in the event the mortgaged property or activity of the Mortgagor or any tenant of the Mortgagor on the mortgaged property shall deal directly or indirectly with the storage, disposal or use of any chemical or environmentally sensitive material, then the Mortgagee shall have the right to require the Mortgagor, at Mortgagor's expense, to perform such Site Assessment and regulatory audit consistent with State and Environmental Protection Agency requirements, all at the cost and expense of the Mortgagor. Further, Mortgagor shall indemnify, defend and hold Mortgagee harmless from and against any and all environmental costs, claims or operations of any tenant of Mortgagor.

The cost of performing all Site Assessments which are agreed to be paid by Mortgagor shall be paid by Mortgagor within five days after demand by Mortgagee.

3.10.    Right of Suit.    Mortgagee shall have the right from time to time to sue for any sums, whether interest, principal or any other sums required to be paid by or for the account of Mortgagor under the terms of this Mortgage, the Note or any other document related to the loan evidenced hereby, and for any other of Mortgagor's liabilities to the Mortgagee which shall become due, without prejudice to the right of

12

Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

3.11.    Legal Description Indemnification.    Mortgagor has read and does hereby approve the legal description of the property as set forth in Exhibit A attached hereto and hereby indemnifies Mortgagee, Mortgagee's successors and assigns, and their attorneys with respect to any liability which might arise as a consequence of Section 697.10, Florida Statutes, or any successors or amendments thereto.

3.12.    Modification of Note and Mortgage.    Mortgagee may at any time and from time to time, without notice to, and without the consent of, any other person or entity (except for Mortgagor in the case of a modification of the terms of the Note or this Mortgage), (1) extend or accelerate the time of payment of the indebtedness secured hereby, (2) agree to modify the terms of the Note or this Mortgage, including increasing payments of interest and principal, (3) release any person liable for payment of any indebtedness secured hereby or for performance of any obligation, (4) release all or any part of the security held for the indebtedness secured hereby, or (5) exercise or refrain from exercising or waive any right Mortgagee may have. Mortgagee shall have such rights and may exercise them without affecting the lien or priority of this Mortgage upon the mortgaged property or any part thereof, and without affecting the liability of any guarantor or surety, notwithstanding the fact that guarantors, sureties, junior mortgages, judgments, or other claims or encumbrances may be impaired, prejudiced, or otherwise adversely affected thereby.

3.13.    Prohibition Against Secondary Financing.    Other than the First Mortgage, the Mortgagor will not permit any other liens or mortgages to be filed against the mortgaged property and if any such liens or mortgages are filed, whether paramount or subordinate to this Mortgage, the Mortgagor will have or cause to be had said liens or mortgages discharged immediately.

3.14.    WAIVER OF JURY TRIAL.    BY THE ACCEPTANCE HEREOF, THE MORTGAGEE AND THE MORTGAGOR AGREE THAT NEITHER THE MORTGAGEE NOR THE MORTGAGOR, NOR ANY ASSIGNEE, SUCCESSOR, HEIR OR LEGAL REPRESENTATIVE OF EITHER MORTGAGOR OR MORTGAGEE (ALL OF WHOM ARE HEREINAFTER REFERRED TO AS THE "PARTIES") SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEDURE BASED UPON OR ARISING OUT OF THE NOTE, THIS MORTGAGE, THE LOAN AGREEMENT OR ANY OTHER INSTRUMENT EVIDENCING, SECURING OR RELATING TO THE INDEBTEDNESS EVIDENCED BY THE NOTE, ANY RELATED AGREEMENT OR INSTRUMENT, ANY OTHER COLLATERAL FOR THE INDEBTEDNESS EVIDENCED BY THE NOTE OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG THE PARTIES, OR ANY OF THEM. NONE OF THE PARTIES WILL SEEK TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY NEGOTIATED BY THE MORTGAGEE AND THE MORTGAGOR, ARE A MATERIAL INDUCEMENT FOR THE MORTGAGEE TO MAKE THE LOAN OR EXTENSION OF CREDIT EVIDENCED BY THE NOTE AND SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER THE MORTGAGOR, NOR THE MORTGAGEE HAVE IN ANY WAY AGREED WITH OR REPRESENTED TO THE OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

The Mortgagor, by Donnie L. Smith, in accordance with resolution attached hereto as Exhibit B, has executed this instrument the day and year first above written being signed sealed and delivered in the presence of subscribing witnesses.

THIS IS A BALLOON MORTGAGE SECURING A VARIABLE RATE OBLIGATION. ASSUMING THAT THE INITIAL RATE OF INTEREST WERE TO APPLY FOR THE ENTIRE TERM OF THE MORTGAGE, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY WOULD BE APPROXIMATELY $125,066.54 TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE. THE ACTUAL BALANCE DUE UPON MATURITY MAY VARY DEPENDING ON CHANGES IN THE RATE OF INTEREST.

1st Witness: _____

Print Name: CHERYL E. SASSARD

NEW LIGHT CHRISTIAN CHURCH, INC., A Florida Non-Profit Corporation (f/k/a Moncrief Christian Church, Inc., A Florida Non-Profit Corporation)

2nd Witness: _____

Print Name: _____

By: _____
Donnie Smith
Its _____ President

Witnesses to

STATE OF FLORIDA
COUNTY OF DUVAL
The foregoing instrument was acknowledged before me this 3rd day of Oct , 2008 by
_____, _____ President of New Light Christian Church, Inc., a Florida non-profit corporation, (f/k/a Moncrief Christian Church, Inc., a Florida non-profit corporation), on behalf of said entity ( ) who is personally known to me or ( ) who has produced _____ (Florida Driver's License) as identification.

_____
Notary Public, State of Florida
My Commission Expires

CHERYL E. SASSARD
MY COMMISSION # DD 786509
EXPIRES: June 6, 2012
Bonded Thru Notary Public Underwriters

14

# EXHIBIT A

## PARCEL ONE:

That certain piece, parcel or tract of land, situate, lying and being a part of Lot 14, as shown on the Plat of a Subdivision of part of the Charles F. Sibbald and Francis Bagley Grants for H. H. Simmons Realty Co., as recorded in Plat Book 3, page 85, of the current public records of Duval County, Florida, together with a part of those certain lands described in Deed Book 842, page 271, of said Public Records, all being more particularly described as follows:

Beginning at the intersection of the Southerly right of way line of Moncrief Road (a 100-foot right of way, as now established), with the Easterly right of way line of Cleveland Road (a 60-foot right of way as now established); thence South 62 degrees 03 minutes 10 seconds East along said Southerly right of way line of Moncrief Road, 504.08 feet to the Easterly line of said Deed Book 842, Page 271; thence South 09 degrees 00 minutes 30 seconds East along said Easterly line of said Deed Book 842, Page 271, 123.55 feet to the Northeasterly corner of Cleveland Heights Unit 3, as recorded in Plat Book 29, Pages 98 and 98A of said Public Records; thence South 84 degrees 06 minutes 42 seconds West along the Northerly line of said Plat of Cleveland Heights Unit 3, 508.53 feet to said Easterly right of way line of Cleveland Road; thence North 05 degrees 44 minutes East along said Easterly right of way line of Cleveland Road, 412.50 feet to the Point of Beginning.

## PARCEL TWO:

Lot 7, MONCRIEF ESTATES UNIT ONE, according to the map or plat thereof as recorded in Plat Book 40, Page(s) 52 and 52A, Public Records of Duval County, Florida.

Prepared by & Return to:
Lawrence V. Ansbacher
Ansbacher & Schneider, P.A.
5150 Belfort Road, Building 100
Jacksonville, FL  32256

Doc # 20082; , OR BK 14662 Page 2249,
Number Pages. 4
Recorded 10/03/2008 at 12:26 PM.
JIM FULLER CLERK CIRCUIT COURT DUVAL COUNTY
RECORDING $35.50

## ASSIGNMENT OF RENTS AND LEASES

1. FOR VALUE RECEIVED, the undersigned, NEW LIGHT CHRISTIAN CHURCH, INC., a Florida non-profit corporation, (f/k/a Moncrief Christian Church, Inc., a Florida non-profit corporation) (the "Borrower"), does hereby assign to PEOPLES FIRST COMMUNITY BANK, (the "Lender") the Borrower's entire interest and position in all leases or rental arrangements including, but not limited to, rents and security deposits, executed or delivered, both oral and written, now existing or hereafter made or existing, (hereinafter collectively referred to as "Leases") with respect to the premises described on **Exhibit A** attached.

2. The Borrower does hereby empower the Lender, its agents or attorneys to collect, sue for, settle, compromise and give acquittances for all of the rents that may become due under the Leases and avail itself of and pursue all remedies for the enforcement of the Leases and Borrower's rights in and under the Leases as if the Borrower might have pursued but for this assignment.

3. The Borrower warrants that the Borrower is the sole owner of the entire landlord's interest in the Leases; that the Leases are valid and enforceable and those now existing have not been altered, modified, or amended in any manner whatsoever, except if an exhibit entitled "Modifications" is attached hereto and the same is completed, that no party is in default under any of the terms, covenants or conditions in any of the Leases; that no rent reserved in the Leases has been assigned or anticipated, and that no rent for any period subsequent to the date of this assignment has been collected in advance of the time when the same is due under the terms of the Leases.

4. This Assignment is given as security for the payment of that certain Mortgage Note (the "Note") of the Borrower dated as of even date herewith in the sum of $143,000.00 and all other sums secured by the Mortgage of even date herewith from the Borrower to the Lender, as "Mortgagee", including future advances encumbering premises of which those demised under any Leases form all or a part. Notwithstanding that this Assignment is given as security for the Note, it is the intention of the parties that this instrument shall be a present and absolute Assignment. Lender shall be immediately entitled to all rents and other amounts now due under the Leases and hereafter accruing, and this Assignment shall constitute a direction to and full authority to the tenants to pay all such amounts to the Lender. The tenants are hereby irrevocably authorized to rely upon and comply with (and shall be fully protected in so doing) any notice or demand by the Lender of any rental or other sums which may be or thereafter become due under the Leases. Notwithstanding the foregoing, so long as no event of default shall then exist under the Note, the Mortgage securing the same, related loan documents, or the provisions of this instrument, Lender grants Borrower a revocable license to collect rents due under the Leases and retain security deposits forfeited under any such Leases, but subject to the provisions of paragraph 8 hereof. Such license shall, at the election of Lender, be immediately revocable by written notice to Borrower from Lender, following the occurrence of any event of default as stated above.

5. Upon issuance of certificate of title pursuant to foreclosure of the Mortgage, all right, title and interest of the Borrower in and to the Leases shall, by virtue of this instrument, thereupon vest in and become the absolute property of the grantee or grantees in such certificate of title without any further act or assignment by the Borrower. Borrower hereby irrevocably appoints Lender and its successor and assigns, as Borrower's agent and attorney-in-fact, to execute all instruments of assignment or further assurances in favor of such grantee or grantees in such certificate of title, as may be necessary or desirable for such purpose; however, nothing contained herein shall prevent Lender from terminating any subordinate lease through such foreclosure.

6. In the exercise of the powers herein granted the Lender, no liability shall be asserted or enforced against the Lender, all such liability being hereby expressly waived and released by the Borrower.

080288.B.06 Assignment of Rents and Leases.doc
Last printed 10/1/2008 3:56 PM

**EXHIBIT**
"D"

The Lender shall not be obligated to perform or discharge any obligation, duty, or liability under the Leases, or under or by reason of this assignment, and the Borrower shall and does hereby agree to indemnify the Lender for and to hold Lender harmless of and from any and all liability, loss or damage which Lender may or might incur under the Leases or under or by reason of this Assignment and of and from any and claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on the Lender's part to perform or discharge any of the terms, covenants, or agreements contained in the Leases. Should the Lender incur any such liability, loss or damage under the Leases or under or by reason of this Assignment, or in the defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorney's fees, shall be secured hereby, and the Borrower shall reimburse the Lender therefor immediately upon demand. Such attorney's fees and costs shall include, but not be limited to, fees and cost incurred in any phase of litigation, including, but not limited to, all trials, proceedings, and appeals, and all appearances in and connected with any bankruptcy proceedings or creditors reorganization proceedings.

7.  This Assignment is intended to be supplementary to and not in substitution for or in derogation of any assignment of rents contained in the Mortgage given by Borrower to Assignee of even date herewith or in any other document.

8.  The Borrower further agrees:

    (a)   that if the Leases provide for abatement of rent during repair of the demised premises by reason of fire or other casualty, the Borrower shall, at the election of the Lender, furnish rental insurance to the Lender, the policies to be in amount and form and written by such insurance companies as shall be satisfactory to the Lender;

    (b)   not to terminate, modify, or amend the Leases or any of the terms thereof, or grant any concessions in connection therewith, either orally or in writing, or to accept a surrender thereof without the written consent of the Lender and that any attempted termination, modification, or amendment of the Leases without such written consent shall be null and void;

    (c)   not to collect any of the rent, income, and profits arising under the Leases for more than one month in advance of the time when the same become due under the terms thereof;

    (d)   not to discount any future accruing rents;

    (e)   not to execute any other assignment of the Leases or any interest therein or any of the rents thereunder, except if Borrower is permitted to execute and deliver a mortgage subordinate to mortgage by Borrower to Lender executed contemporaneously herewith;

    (f)   to perform all of the Borrower's covenants and agreements as landlord under the Leases and not to suffer or permit to occur any release of liability of the tenants, or rights to the tenants to withhold payment of rent; and to give prompt notices to the Lender of any notice of default on the part of Borrower with respect to the Leases received from the tenants thereunder; and to furnish Lender with complete copies of such notices;

    (g)   if so requested by the Lender, to enforce the Leases and all remedies available to the Borrower against the tenants in case of default under the Leases by the tenants, or any of them;

    (h)   that, notwithstanding any variation of the terms of the Mortgage of even date herewith given by Borrower to Lender or any extension of time for payment thereunder or any release of part or parts of the lands conveyed thereunder, the Leases and benefits hereby assigned shall continue as additional security in accordance with the terms thereof;

2

(i)    not to alter or change the terms of any guarantees of any of the Leases or cancel or terminate such guarantees without the prior written consent of the Lender;

(j)    not to request, consent to, agree to, or accept a subordination of the Leases to any mortgage or other encumbrance now or hereafter affecting the premises other than the Mortgage of even date herewith given by Borrower to Lender;

(k)    not to execute any right of election, whether specifically set forth in any Lease or otherwise, which would in any way diminish the tenant's liability or have the effect of shortening the stated term of the Lease;

(l)    not to sell, transfer, or remove any personal property owned by Borrower and now or hereafter located on the above-referenced premises, unless such action results in substitution or replacement with similar items owned by Borrower and not otherwise encumbered, of equal value, without the prior written consent of Lender; this prohibition shall not restrict Borrower from exercising Borrower's rights to seize and sell the personal property of tenants who have defaulted under their leases with Borrower;

(m)    to furnish Lender with a current rent roll, upon request; and

(n)    upon request, to furnish Lender with true and correct copies of all Leases and amendments thereto.

9.    This Assignment shall include any extensions and renewals of the Leases and any reference herein to the Leases shall be construed as including any such extensions and renewals.

10.    This instrument shall be binding upon and inure to the benefit of the respective successors and assigns of the parties hereto. The words "Borrower", "Assignee", and "tenants", wherever used herein, shall include the persons named herein and designated as such and their respective successors and assigns, and all words and phrases shall be taken to include the singular or plural and masculine, feminine or neuter gender, as may fit the case.

IN WITNESS WHEREOF, the Borrower has caused this Assignment to be executed and delivered effective the 3 day of Oct , 2008.

Signed, sealed and delivered
in the presence of:

_____
Print Name: CHERYL E. SASSARD

_____
Print Name:
As to Borrower: RENEE L ANSBACHER

NEW LIGHT CHRISTIAN CHURCH, INC.,
A Florida Non-Profit Corporation (f/k/a Moncrief
Christian Church, Inc., a Florida non-profit
corporation)

By: _____
Its    President
Print Name: _____
"BORROWER"

STATE OF FLORIDA
COUNTY OF DUVAL \

The foregoing instrument was acknowledged before me this _____ day of Oct , 2008 by _____ President of New Light Christian Church, Inc., a Florida non-profit corporation, (f/k/a Moncrief Christian Church, Inc., a Florida non-profit corporation) on behalf of such corporation. He/she ( ) is personally known to me or (✓) produced _____ (Florida Driver's License) as identification.

_____
Notary Public, State of Florida
My Commission Expires:

CHERYL E. SASSARD
MY COMMISSION # DD 765869
EXPIRES: June 6, 2012
Bonded Thru Notary Public Underwriters

3

# EXHIBIT A

### PARCEL ONE:

That certain piece, parcel or tract of land, situate, lying and being a part of Lot 14, as shown on the Plat of a Subdivision of part of the Charles F. Sibbald and Francis Bagley Grants for H. H. Simmons Realty Co., as recorded in Plat Book 3, page 85, of the current public records of Duval County, Florida, together with a part of those certain lands described in Deed Book 842, page 271, of said Public Records, all being more particularly described as follows:

Beginning at the intersection of the Southerly right of way line of Moncrief Road (a 100-foot right of way, as now established), with the Easterly right of way line of Cleveland Road (a 60-foot right of way as now established); thence South 62 degrees 03 minutes 10 seconds East along said Southerly right of way line of Moncrief Road, 504.08 feet to the Easterly line of said Deed Book 842, Page 271; thence South 09 degrees 00 minutes 30 seconds East along said Easterly line of said Deed Book 842, Page 271, 123.55 feet to the Northeasterly corner of Cleveland Heights Unit 3, as recorded in Plat Book 29, Pages 98 and 98A of said Public Records; thence South 84 degrees 06 minutes 42 seconds West along the Northerly line of said Plat of Cleveland Heights Unit 3, 508.53 feet to said Easterly right of way line of Cleveland Road; thence North 05 degrees 44 minutes East along said Easterly right of way line of Cleveland Road, 412.50 feet to the Point of Beginning.

### PARCEL TWO:

Lot 7, MONCRIEF ESTATES UNIT ONE, according to the map or plat thereof as recorded in Plat Book 40, Page(s) 52 and 52A, Public Records of Duval County, Florida.

10/08/2008 at 12:26 PM, JIM FULLER CLERK CIRCUIT COURT DUVAL COUNTY RECORDING
$27.00

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE
### FINANCING STATEMENT FORM

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
(904) 296-0100

B. SEND ACKNOWLEDGMENT TO:
Name Lawrence V. Ansbacher, Esquire

Address Ansbacher & Schneider, P. A.

Address 5150 Belfort Road, Building 100

City/State/Zip Jacksonville, FL 3 2256

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

1a. ORGANIZATION'S NAME
New Light Christian Church, Inc.

| 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|
| 1c. MAILING ADDRESS 4314 Moncrief Road West | | CITY Jacksonville | | STATE FL | POSTAL CODE 32209 | COUNTRY USA |
| 1d. TAX ID# 59-3131317 | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION corporation | 1f. JURISDICTION OF ORGANIZATION Florida | | 1g. ORGANIZATIONAL ID# N93000001318 | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|
| 2c. MAILING ADDRESS | | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | | 2g. ORGANIZATIONAL ID# | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

3a. ORGANIZATION'S NAME
Peoples First Community Bank

| 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|
| 3c. MAILING ADDRESS 1022 West 23rd Street, 4th Floor | | CITY Panama City | | STATE FL | POSTAL CODE 32405 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:

See Schedule A attached hereto and, by this reference, made a part hereof.

| 5. ALTERNATE DESIGNATION (if applicable) | | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | | LESSOR/BAILOR | |
|---|---|---|---|---|---|---|
| | | AG. LIEN | NON-UCC FILING | | SELLER/BUYER | |

6. Florida DOCUMENTARY STAMP TAX — YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX

[x] All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

[ ] Florida Documentary Stamp Tax is not required.

7. OPTIONAL FILER REFERENCE DATA 680255/ejs

STANDARD FORM - FORM UCC-1 (REV.11/2001)    Filing Office Copy    Approved by the Secretary of State, State of Florida

3


EXHIBIT
"E"

SCHEDULE A

All gas, steam, electric, water, and other heating, cooking, refrigerating, lighting, plumbing, ventilating, irrigating and power systems, machines, appliances, fixtures and appurtenances owned by the Debtor, or included in the plans for the construction of the improvements on the property described on Exhibit A attached ("Exhibit A Property") which now are or may hereafter pertain to, or be used with, in or on the property more particularly described on Exhibit A Property even though they be detached or detachable; also, all building, improvement or construction materials, supplies and equipment hereafter delivered to Exhibit A Property and stored thereon, contemplating installation or use in constructions thereon and all rights and interest of the Debtor in building permits and architectural plans and specifications relating to contemplated constructions or improvements on Exhibit A Property and all rights and interest of Debtor in present or future mortgage loan commitments pertaining to any of Exhibit A Property and improvements thereon. Further, together with all of Debtor's right, title and interest in and to all hazard insurance required to be secured and kept in full force and effect by the Secured Party and further together with all judgments, awards of damages and settlements hereafter made resulting from actual or threatened condemnation proceedings or the taking of Exhibit A Property or any part thereof under the power of eminent domain, or for any damage, (whether caused by such taking or otherwise) to Exhibit A Property or the improvements thereon, or any part thereof, or to any rights appurtenant thereto, including any award for change of grade or streets.

All contracts, now existing or hereafter executed, with general contractors, subcontractors, surveyors, materialmen, suppliers and/or laborers in connection with or pertaining to the construction of improvements on Exhibit A Property.

All agreements for architectural/engineering services between Debtor and any architect/engineer which are now existing or which are hereinafter entered into with respect to the construction of improvements on Exhibit A Property.

All drawings, plans and specifications prepared by any architect/engineer in connection with the construction of improvements on Exhibit A Property.

All building permits, governmental permits, licenses or other governmental authorizations in favor of or in the name of Debtor now existing or hereafter executed, authorizing the construction of the improvements on Exhibit A Property, including, but not limited to, stormwater permits, water distribution system permits, sewage collection system permits, Department of Transportation permits, and traffic concurrency credits.

All utility service agreements now existing or hereafter executed wherein a utility company has agreed to provide utilities to Exhibit A Property.

All contracts for sale of Exhibit A Property, or any portion thereof, to third party purchasers.

030288.B.01 Misc. Documents.doc
Last printed 10/1/2008 3:11 PM

# EXHIBIT A

### PARCEL ONE:

That certain piece, parcel or tract of land, situate, lying and being a part of Lot 14, as shown on the Plat of a Subdivision of part of the Charles F. Sibbald and Francis Bagley Grants for H. H. Simmons Realty Co., as recorded in Plat Book 3, page 65, of the current public records of Duval County, Florida, together with a part of those certain lands described in Deed Book 842, page 271, of said Public Records, all being more particularly described as follows:

Beginning at the intersection of the Southerly right of way line of Moncrief Road (a 100-foot right of way, as now established), with the Easterly right of way line of Cleveland Road (a 60-foot right of way as now established); thence South 62 degrees 03 minutes 10 seconds East along said Southerly right of way line of Moncrief Road, 504.08 feet to the Easterly line of said Deed Book 842, Page 271; thence South 09 degrees 00 minutes 30 seconds East along said Easterly line of said Deed Book 842, Page 271, 123.55 feet to the Northeasterly corner of Cleveland Heights Unit 3, as recorded in Plat Book 29, Pages 98 and 98A of said Public Records; thence South 84 degrees 06 minutes 42 seconds West along the Northerly line of said Plat of Cleveland Heights Unit 3, 508.53 feet to said Easterly right of way line of Cleveland Road; thence North 05 degrees 44 minutes East along said Easterly right of way line of Cleveland Road, 412.50 feet to the Point of Beginning.

### PARCEL TWO:

Lot 7, MONCRIEF ESTATES UNIT ONE, according to the map or plat thereof as recorded in Plat Book 40, Page(s) 52 and 52A, Public Records of Duval County, Florida.

ALLONGE TO THAT CERTAIN MORTGAGE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $143,000.00, DATED OCTOBER 3, 2008, EXECUTED AND DELIVERED BY NEW LIGHT CHRISTIAN CHURCH, INC., A FLORIDA NON-PROFIT CORPORATION (F/K/A MONCRIEF CHRISTIAN CHURCH, INC., A FLORIDA NON-PROFIT CORPORATION) AS MAKER, IN FAVOR OF PEOPLES FIRST COMMUNITY BANK, AND THAT CERTAIN CONSOLIDATED MORTGAGE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $153,000.00, DATED JANUARY 14, 2009, EXECUTED AND DELIVERED BY NEW LIGHT CHRISTIAN CHURCH, INC., A FLORIDA NON-PROFIT CORPORATION (F/K/A MONCRIEF CHRISTIAN CHURCH, INC., A FLORIDA NON-PROFIT CORPORATION) AS MAKER, IN FAVOR OF PEOPLES FIRST COMMUNITY BANK.

Pay to the order of HANCOCK BANK, without recourse

FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR PEOPLES FIRST COMMUNITY BANK, PANAMA CITY, FLORIDA

By: _Lisa L. Jones_
Name: Lisa L. Jones
Title:  Attorney-in-Fact

Loan Number: 5581814

(v. 030510)



RECORD & RETURN TO:

Hancock Bank
ATTN: Lending Services
P O Box 4020
Gulfport, MS 39502

Doc # 2010193000, OR BK 15340 Page 2161,
Number Pages: 2
Recorded 03/18/2010 at 11:19 AM,
JIM FULLER CLERK CIRCUIT COURT DUVAL
COUNTY
RECORDING $18.50

PREPARED BY: Stephanie Bush/Julie Seehuetter
    LOAN # 5581814

### ASSIGNMENT OF NOTE, MORTGAGE AND LOAN DOCUMENTS

THIS ASSIGNMENT (this "Assignment") is made effective this 18th day of December 2009, by and between the **FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF PEOPLES FIRST COMMUNITY BANK, PANAMA CITY, FLORIDA**, organized under the laws of the United States of America ("Assignor"), having an address of 1601 Bryan Street, Suite 1700, Dallas, Texas 75201, Attention: Settlement Manager, and **HANCOCK BANK** ("Assignee") with an address of 2510 14th Street, One Hancock Plaza, 7th Floor, Gulfport, Mississippi 39502.

WHEREAS, on December 18, 2009, in accordance with Florida law and the Federal Deposit Insurance Act, 12 U.S.C §1821 *et. seq.* (the "FDIC Act"), the Office of Thrift Supervision closed the operations of Peoples First Community Bank, Panama City, Florida ("Peoples First"), and appointed the Assignor as the receiver of Peoples First.

WHEREAS, in accordance with the Act, the Assignor is empowered to liquidate the assets of Peoples First in order to wind down the affairs of Peoples First.

WHEREAS, on or about December 18, 2009, in accordance with that certain Purchase and Assumption Agreement (Modified Whole Bank, All Deposits) dated December 18, 2009 (the "Purchase Agreement"), by and among the Assignor, Assignee and the Federal Deposit Insurance Corporation ("FDIC"), the Assignor sold certain assets of Peoples First to Assignee, including, but not limited to, the following loan documents and other rights:

A.    That certain Mortgage Note dated October 3, 2008, executed by New Light Christian Church, Inc., A Florida Non-Profit Corporation (f/k/a Moncrief Christian Church, Inc., A Florida Non-Profit Corporation), (the "Borrower"), in the original principal amount of One Hundred Forty-Three Thousand and 00 /100 Dollars ($143,000.00) and that certain Consolidated Mortgage Note dated January 14, 2009, executed by New Light Christian Church, Inc., A Florida Non-Profit Corporation (f/k/a Moncrief Christian Church, Inc., A Florida Non-Profit Corporation), (the "Borrower"), in the original principal amount of One Hundred Fifty-Three Thousand and 00 /100 Dollars ($153,000.00) in favor of Peoples First (hereinafter referred to as the "Note");

B.    That certain Real Estate Mortgage and Security Agreement dated October 3, 2008, granted by the Borrower to Peoples First, and recorded in Official Records Book 14662, Page 2234, and that certain Future Advance, Modification, Consolidation and Restatement Agreement dated January 14, 2009, and recorded in Official Records Book 14767, Page 1441 of the public records of Duval County, Florida, with respect to the real property described therein (hereinafter collectively referred to as the "Mortgage"), which Mortgage secures the repayment of the Note;

C.    That certain Loan Agreement dated October 3, 2008, by and between Peoples First and Borrower (hereinafter referred to as the "Loan Agreement");

D.    That certain Restated Unconditional and Irrevocable Guaranty dated January 14, 2009, from Donnie L. Smith and Sharon Y. Smith, in favor of Peoples First (hereinafter referred to as the "Guaranty");

E.    That certain UCC-1 Financing Statement from Borrower, as Debtor, filed in the Florida Secured Transaction Registry on October 9, 2008, bearing Instrument No. 200809321902, of the public records of Secretary of State, Florida (hereinafter collectively referred to as the "Financing Statements")

H.    Any and all claims, actions, causes of action, choses of action, judgments, demands, rights, damages and liens, together with the right to seek reimbursement of attorney's fees, costs or other expenses of any nature whatsoever, whether known or unknown, arising from, relating to or based upon that certain loan evidenced by the Note and Mortgage above, and/or which are the subject matter of the action filed in the N/A Court, _____ County, case-styled _____, Case Number _____ (the "Claims").

The documents identified in paragraph(s) C, D, E, F and G above are hereinafter collectively referred to as the "Collateral Documents."

NOW, THEREFORE, for valuable consideration granted by Assignee to Assignor, receipt of which is hereby acknowledged, Assignor hereby agrees as follows:

1.    <u>Assignment of Note, Mortgage and Collateral Documents.</u>  Assignor hereby unconditionally grants, transfers, and assigns to Assignee all of Assignor's right, title and interest in the Note, Mortgage and Collateral Documents, including all of Assignor's right to receive payments of principal and interest under the Note. Concurrently herewith, Assignor has endorsed to Assignee, without recourse, the Note.

2.    <u>All Other Loan Documents.</u>  Assignor hereby unconditionally grants, transfers, and assigns to Assignee all Assignor's right, title and interest in all other documents or agreements entered into by Peoples First (or its predecessor) in connection with or related to the loan evidenced by the Note, Mortgage and Collateral Documents (hereinafter referred to collectively as the "Loan"). In this Assignment, the Note, the Mortgage, the Collateral Documents, and all other documents evidencing or securing the Loan are referred to collectively as the "Loan Documents."

3.    <u>Assignment of Claims.</u>  Assignor hereby unconditionally grants, transfers, and assigns to Assignee all of Assignor's right, title and interest in and to the Claims.

4.    <u>Representations and Warranties.</u>  In accordance with the Act, Assignor has full power to sell and assign the Loan Documents to the Assignee. Assignor has made no prior assignment or pledge of the Loan Documents. This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

5.    <u>Successors and Assigns.</u>  This Assignment shall inure to the benefit of the successors and assigns of Assignor and Assignee, and be binding upon the successors and assigns of Assignor and Assignee.


IN WITNESS WHEREOF, Assignor has executed this Assignment to Assignee as of July 21, 2010.

> FEDERAL DEPOSIT INSURANCE CORPORATION,
> AS RECEIVER FOR PEOPLES FIRST COMMUNITY
> BANK, PANAMA CITY, FLORIDA, organized under the
> laws of the United States of America
>
> By: _Lisa L. Jones_ _____
> Name:  Lisa L. Jones
> Title:  Attorney-in-Fact


STATE OF MISSISSIPPI
COUNTY OF HARRISON

Personally appeared before me, the undersigned authority in and for the said county and state, on this the _____ day of _____, 2010, within my jurisdiction, the within named Lisa L. Jones, who *(check one)* _____ is personally known to me or _____ has provided me with *(insert type of identification)* _____ as satisfactory evidence that he/she is the person who executed this _____ and who acknowledged that she is the attorney in fact of the FEDERAL DEPOSIT INSURANCE